## SUPREME COURT.

## Daniel E. Sickles agt. The Manhattan Gas-Light Company.

*Gas companies — Power of a court of equity to restrain a gas company from removing meter for non-payment of bill claimed by them to be due — Injunction.*

The law of 1859, allowing gas companies to stop the supply of gas in case of the non-payment of bills for the gas, has not made the gas company the sole judge of the question whether any, and, if so, what amount of remuneration is due to it; nor has the right of a party to resort to the courts to have the question whether a case has arisen in which the company is justified in cutting off his supply of gas, and to have the amount due ascertained and settled, been taken away.

When a dispute arises between the company and a consumer, the latter is entitled to have his rights investigated by the courts.

In such case an injunction will be granted to prevent the cutting off of the supply of gas until the cause can be tried.

*Special Term, April,* 1882.

Motion to continue a temporary injunction to restrain the defendants from removing the meter or cutting off the supply of gas from the plaintiff's premises, at No. 14 Fifth avenue. The plaintiff asserted that unjust and improper bills for gas, between the 18th of November, 1880, and 19th of October, 1881, were presented by this company, during part of which time he was absent in Europe, his residence closed and the gas never lighted. He says he offered to pay for the gas consumed, but that this company refused to accept, and threatened to remove the meter and cut off his supply of gas. He asks, in his complaint, that the amount due the company be ascertained and that the company be directed to accept the sum so ascertained, and restrained from removing the meter.

*M. B. Field* and *John Graham*, for plaintiff.

*H. H. Anderson*, for defendant.

LAWRENCE, *J.*— The plaintiff alleges that heretofore and on or about the first day of November, 1880, he requested the defendant to supply him with illuminating gas at No. 14 Fifth avenue, and in pursuance of said request, said defendant put in a gas meter, and has since supplied the plaintiff with said illuminating gas.    That heretofore and before the commencement of this action, the defendant ·presented to the plaintiff and demanded payment of unjust and improper bills, for gas alleged to have been furnished to the plaintiff, at his said residence No. 14 Fifth avenue aforesaid, between the 18th day of November, 1880, and the 19th day of October, 1881, during a great part of which period this plaintiff was absent from the United States, to wit, from about the 29th day of January, 1881, to about the 6th day ·of May, 1881, and his said residence was closed and the gas never lighted therein, and which gas was never furnished to or consumed by this plaintiff.    That the plaintiff has either paid the defendant or offered to pay the defendant for all gas consumed by him, and is now ready and willing and still offers to pay for the same, but the defendant has refused and still refuses to accept the same, and has threatened and still threatens to remove the said meter, and to cut off the supply of gas to the plaintiff's said premises, to the plaintiff's great injury.    And he prays that the amount justly due by the plaintiff to the defendant may be ascertained, and that the defendant may be adjudged to accept the same.    And that the said defendant, its officers, &c., may be enjoined and restrained from removing the meter from plaintiff's said premises, or from cutting off the supply of gas therefrom, and for such other and further relief, &c.

By chapter 311 of the Laws of 1859, section 9, it is pro-

vided that "if any persons or person supplied with gas by
any such gas-light company, shall neglect or refuse to pay
the rent or remuneration due for the same, or for the meter,
pipes or fittings let by the company for supplying or using
such gas, or for ascertaining the quantity consumed, as
required by his or their contract with the company, or shall
refuse or neglect, after being required so to do, to make the
deposit in this act mentioned and thereby authorized to be
required, such company may prevent and stop the gas from
entering the premises of such persons or person, and in
all cases in which any such gas-light company is or shall be
authorized to cut off, prevent or stop the supply of gas from
any premises, their officers, agents or workmen may enter
into or upon any such premises between the hours of eight
o'clock in the forenoon and six o'clock in the afternoon, and
separate, take and carry away any such meter, pipe, fittings
or other property of the company, and may disconnect any
meter, pipe, fittings or other works whether the property of
the company or not, from the mains or pipes of the com-
pany."

Notwithstanding the very comprehensive language which is
used in the section of the act just quoted, I do not under-
stand that the statute has made the gas company the sole
judge of the question, whether any, and if so, what amount of
rent or remuneration is due to it, nor that such company's
determination is necessarily binding and conclusive upon the
consumer, nor that by anything in the section contained, his
right to resort to the courts to have the question whether a
case has arisen in which the company is justified in cutting
off his supply of gas ascertained and settled has been taken
away. Courts of equity have frequently interfered by injunc-
tion in cases of a similar or analogous character.

See *Cromwell* agt. *Stevens*, (2 *Daly*, 15), where it was held
that an injunction would be granted to restrain the Croton
Aqueduct Board of the city of New York, from cutting off

the croton water from the plaintiff's buildings, on the ground of the non-payment of the water rate, where the water rate charged by them, and for the non-payment of which they claimed to stop the supply, was more than was authorized by law (*See, also, Brooklyn City Railroad Company* agt. *Furey*, 4 *Abb. Pr. Rep.* [*N. S.*], 364; *The People* agt. *The Canal Board*, 55 *N. Y.*, 390, 393, 394, *per* ALLEN, *J.*).

In *Morey* agt. *The Metropolitan Gas-Light Co.* (33 *Superior Ct. Rep.*, 185) it was held that the right of a gas company, under the section of the act to which I *have* just referred, to shut off the gas from the premises of a person who is a customer, and who has made the deposit required, *depends wholly upon the fact as to whether or not that person is in arrears for gas furnished by the company, and that is a question of fact to be determined by evidence, and not by the will or conclusion of the company.* That was an action brought to recover damages for cutting off the supply of gas, and not a suit for an injunction to restrain its cutting off. But the principle there asserted is applicable in my opinion to this case. In support of the plaintiff's motion to continue the injunction, several affidavits are produced which are to the effect that the plaintiff sailed for Europe on or about the 29th day of January 1881, and did not return until about the 6th day of May, 1881. That during the whole of this period the plaintiff's premises were closed, and the gas was turned off and was never once lighted in them, or in any part of them, the meter remaining on the premises during this time, but that no gas was consumed.

The affidavits also show that a Mr. Dudley occupied premises in the same building, and that between the 1st and 10th of May, 1881, he and his entire family went out of town; that their premises were closed, and that the gas was turned off between the meter and the street main, and that it so remained turned off until about the 20th of August, 1881, but that nevertheless gas bills were sent in regularly every

month, showing the index of the meter and the amount of gas consumed. Also that a Doctor Spaun, who occupied an office in the same building, having had a difficulty in regard to the amount of his gas bill, received first a bill for six dollars and ninety-six cents, after his gas had been cut off, and without having used any more gas he subsequently received a bill for eleven dollars and one cent. The cases of Dudley and Spaun are not, of course, controlling in regard to the disposition of this motion, but the facts stated in the affidavits in respect to their cases go to corroborate the plaintiff's theory, that the meters furnished by the defendants are not always accurate, and go to show that the meters in that particular house were inaccurate.

On the part of the defendant it is stated that a report having been made to the company that the plaintiff desired to have the meter inspected, the vice-president caused it to be removed and inspected, and that the result of such inspection was, that the meter instead of registering too much, registered too little; that is, that it passed one hundred and four feet of gas, to every one hundred feet registered, and that with this exception the meter was in good condition and working order.

By the affidavit of Thomas Kearney, who was an indexer in the employ of the company, it appears that when he told the wife of the janitor that he came to cut the gas off from General Sickles' meter, he was told in substance that the General was short of money and was expecting a remittance from some quarter, and would send over the money as soon as he could get it. That at a subsequent interview with the janitor, he stated to him that he was ordered to shut off the gas for non-payment of bills, and that the janitor refused to let him in. By the affidavit of Hadley, also an indexer, it appears that at an interview with General Sickles on the 15th of November, 1881, the plaintiff said: "If the meter is tested and you can prove to me that I used the gas, I will

pay it." That this was reported to the vice-president, and that the affiant was directed by him to return to the premises and change the meter, and bring the meter then there to be proved. That he took out the meter and brought it to the proving department in the charge of the inspector, the substance of whose affidavit I have stated. Sweeney, another indexer, makes an affidavit to which he annexes a statement, stated by him to be in all respects true, showing the amount of gas which passed through said meter between October 17, 1880, and October 19, 1881, and Tally, an inspector of meters in defendant's employ, states that his visits to the meters are so timed as to be between the days of visitation, made by the person who takes the amounts, for the purpose of making out bills. That he visited the premises in question, and he annexes to his affidavit a schedule, showing the results obtained by him, which do not differ materially from those returned by Sweeny, when the difference in the time at which the respective indexes were made is taken into consideration. The secretary of the American Meter Company makes an affidavit that it is impossible for a meter to register or indicate gas without gas passing through it, and the president of the company makes an affidavit to the same effect. The defendants, on the argument of the motion, invoked the principle, that where an answer denies all the equities of the bill, fully and unequivocally, the injunction must be denied. But in this case I find that the answer of the defendant's was not served until after the argument of the motion. It is not, therefore, before the court, and it has not been read by me. It may, however, be contended by the defendants that the affidavits read on the motion, answer all the material allegations of the complaint and of the moving papers. To determine this question it is necessary to look a little more closely at the schedules showing the amount of gas alleged to have been consumed by the plaintiff. It is beyond a doubt, on the affidavits before me, that the plaintiff left this country on the 29th of January,

1881, and remained away until the sixth day of May of that year. The last bill which was rendered prior to his departure, according to the schedule annexed to the affidavit of vice-president Carpenter, showed a consumption of 3,600 cubic feet between that date and the date of the rendition of the immediately preceding bill, to wit, on the eighteenth of December. The bill preceding that of December eighteenth was rendered November 17, 1880, and between those two dates, the plaintiff is stated to have consumed 4,200 cubic feet of gas. A bill was rendered, also, on the sixteenth of February, eighteen days after the plaintiff had left the country, which showed the consumption of 2,100 cubic feet between that date and the eighteenth of January. If this bill was correct, the plaintiff consumed 2,100 cubic feet of gas between the eighteenth of January and the twenty-ninth of January, the date on which he left, and on which the gas was cut of, or in eleven days. The next bill which was rendered is dated the eighteenth of May, and shows a consumption between the 16th of February, 1881, and that date, of 1,000 feet of gas. At that time, the plaintiff had been home twelve days. The plaintiff contends that on the face of these bills, it is apparent that he has been charged for gas consumed during his absence, when the gas was cut off, and when none was or could have been consumed by him. The bills rendered before his departure show that the plaintiff at times consumed between 116 and 135 cubic feet of gas per night, while the bill rendered on the sixteenth of February, which showed the amount of gas consumed by him between January eighteenth and January twenty-ninth, a period of eleven days, shows a consumption of 2,100 cubic feet, or of nearly 200 feet per night. I think that the inference strongly arises from this statement that the meter did not register correctly, and that the plaintiff, before submitting to the annoyance and vexation of having his gas cut of, is entitled to have the question tested as to the correctness of the bills presented to him.

It is true that the defendant showed that the meter in question had been properly tested and proved by the proper officers, and it is proper to state in this connection that everything appears to have been done which could have been done by it to secure accuracy and correctness in the meter, but the fact remains that in addition to the alleged case of the plaintiff other parties occupying rooms in the same house received bills for gas indicated by other meters as having been consumed by those parties, when they were confessedly absent from the city, and the gas had been shut off. This evidence tends strongly to show that gas meters are not infallible. As I have before observed, I do not understand that the gas company is vested by statute with the power of positively determining as to the amount of the "rent or remuneration due to it." I am, therefore, of the opinion that when a dispute arises between the company and the consumer, the latter is entitled to have his rights investigated by the court. In this case I am free to say that the preponderance of the evidence on the affidavits seems to me to be with the plaintiff, and as he expresses himself to be ready and willing to pay the amount actually due from him, I am inclined to continue the preliminary injunction until the cause can be tried. On the trial the amount which is due from him to the company can be ascertained and adjusted (*See Hendrickson* agt. *The New York Central Railroad Co.*, 78 *N. Y.*, 423). The learned counsel for the defendant contended upon the argument that in a case of this character an injunction should not be granted, for the reason that the defendant is perfectly responsible, and that the plaintiff could have paid the amount demanded of him under protest, and brought an action to recover the amount illegally demanded from him. In this view I do not concur, for the reason that it has long been settled that a court of equity will intervene by injunction to prevent irreparable mischief. This seems to me to be a case in which, if the plaintiff is right, it cannot be justly claimed

that he can be fully compensated by an action for damages. The use of gas in cities has become almost as great a necessity as the use of water, and an illegal deprivation of one or the other, particularly where such use is for ordinary domestic and family purposes, would cause, I think, such damage as to call for the interposition of a court of equity (*See Cromwell* agt. *Stevens,* 2 *Daly,* 15). As I am desirous of fully protecting the rights of the company in case it should be eventually determined that the plaintiff is not entitled to an injunction I will require the plaintiff to increase the security given upon obtaining the preliminary order if the defendant establishes that such security is not adequate to satisfy any damages which it may sustain by reason of the granting of the injunction.

The motion to continue the injunction will be granted, with ten dollars costs.