[S. F. No. 2821.    Department One.—January 20, 1904.]

## JOHN P. GALLAGHER, Appellant, v. EQUITABLE GAS LIGHT COMPANY, Respondent.

GAS COMPANY—CONTRACT FOR CONTINUOUS RATE—OSTENSIBLE AGENCY —KNOWLEDGE OF COMPANY.—Where a contract for the supply of gas at a specified rate by the corporation defendant to the plaintiff would not be entered into by plaintiff unless the defendant agreed to supply gas at that rate so long as it was used in plaintiff's hotel, and the agent of defendant seeking to obtain the contract modified it accordingly, whereupon plaintiff signed it, and it was delivered to the company without actual information to it of such modification, such agent had ostensible, if not actual, authority to modify the contract, and the defendant, which received the contract as so modified, must be charged with knowledge of all of its provisions, of which it had the means of knowledge, though it carelessly and negligently deprived itself of such means by filing away the contract without noticing the modification, which was distinctly legible.

ID.—NEW PROPOSAL—RATIFICATION OF MODIFICATION.—If the change made by defendant's agent to suit the plaintiff may be regarded as a rejection of the contract as originally proposed by defendant to plaintiff, and as a new proposal by plaintiff, the voluntary acceptance of the proposal by the defendant, and its action under it, constituted it a contract binding upon the defendant.

ID.—VALIDITY OF CONTRACT AS MADE—CONSIDERATION—MUTUALITY.— Where it appeared that the plaintiff agreed to take gas from the

defendant in his hotel, and agreed to discontinue the use of electricity therein, and incurred expense for gas-fixtures, the facts show a consideration for the contract for supply of the gas at the specified rate so long as using it in his hotel, and it was not necessary to mutuality that the contract should name a definite period of time for its continuance; and so long as plaintiff took the gas defendant could compel payment at the agreed rate.

ID.—MUTUALITY OF PERFORMANCE—ACTION—OBLIGATION OF PLAINTIFF.—Where the contract was mutually performed for several months, the commencement of an action by the plaintiff to enjoin the discontinuance of gas under the contract by the defendant put the plaintiff under the obligation of the contract.

ID.—OBLIGATION OF GAS COMPANY—PERFORMANCE OF CONTRACT BY CONSUMER—INJUNCTION MAINTAINABLE.—The obligation of the gas company to supply property-owners with gas results from the statute, and not from contract; but where it has made a contract fixing a rate the provisions of section 632 of the Civil Code imply that the gas corporation cannot shut off the supply of gas so long as the consumer does not refuse to pay for the gas supplied by the corporation, "as required by his contract," and the contract being shown, and plaintiff having complied fully with its terms, and averring readiness to continue to take gas and ability to pay for it, injunction will lie.

ID.—ENFORCEMENT OF CONTRACT UNDER STATUTE—SPECIFIC PERFORMANCE—SUPPORT OF INJUNCTION.—The enforcement of the contract for gas as to the rate and continuance of rate agreed upon, under our statute, in a suit to enjoin its discontinuance, is not an action for specific performance in the strict sense. It does not follow that an injunction will not lie because specific performance cannot be enforced. It is sufficient to support the injunction that there is no complete and adequate remedy at law.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion.

Edward J. Hill, for Appellant.

The defendant is chargeable under the contract, made by its ostensible agent, and retained and acted upon by the defendant. (Civ. Code, secs. 19, 1584, 1589, 2316, 2317, 2331, 2332; *Shain* v. *Sresovich,* 104 Cal. 405; *Bloom* v. *Hazard,* 104 Cal. 312; *Reddy* v. *Smith,* 42 Cal. 245; *Merrill* v. *Pacific Transfer Co.,* 131 Cal. 588; *Kirkland* v. *Dinsmore,* 62 N. Y.

171.[1])   The defendant is bound under the statute to furnish
gas, independent of contract, but it is bound to furnish gas at
the agreed rate.   (Civ. Code, secs. 629, 632; *Capital Gas Co.
v. Young*, 109 Cal. 144.)   The consideration of the contract
was a promise for a promise and is sufficient to support it.
(Civ. Code, sec. 1605; *Murphy* v. *Rooney*, 45 Cal. 78; *Siddall*
v. *Clark*, 89 Cal. 324; *Southern Pacific R. R. Co.* v. *Allen*, 112
Cal. 462.)   Any original lack of mutuality will not preclude
the enforcement of the contract, where the plaintiff by suit
places himself under its obligation.   (*Sayward* v. *Houghton*,
119 Cal. 548; *Thurber* v. *Meves*, 119 Cal. 35; *Spires* v. *Ur-
bahn*, 124 Cal. 111; *Hall* v. *Center*, 40 Cal. 67.)   The contract
being established, *mandamus* or injunction will lie.   (*Mackin
v. Portland Gas Co.*, 38 Or. 120; *Louisville Gas Co.* v. *Dulaney*,
100 Ky. 495; *Xenia Real Estate Co.* v. *Macy*, 147 Ind. 568;
*Sickles* v. *Manhattan Gas Co.*, 64 How. Pr. 33.)

Naphtaly, Freidenrich & Ackerman, for Respondent.

Neither the solicitor nor the secretary had any authority to
contract to deliver gas for all time at any specified rate.
(*Fontana* v. *Pacific Can Co.*, 129 Cal. 51; *Pauly* v. *Pauly*, 107
Cal. 8;[2] *Blood* v. *La Sereno L. and W. Co.*, 113 Cal. 231.)
There was no knowledge of the contract such as is required
to constitute a ratification.   (*Deane* v. *Bassett*, 57 Cal. 640.)
A ratification could only be made in the manner required for
original authority.   (Civ. Code, sec. 2310; *Blood* v. *La Se-
reno L. and W. Co.*, 113 Cal. 231.)   The contract was void for
want of mutuality, appellant not having agreed to take gas
for any definite period of time.   (*Campbell* v. *Lambert*, 36
La. Ann. 35;[3] *Houston* v. *Mitchell*, 38 Tex. 85; *Bailey* v.
*Austin*, 19 Minn. 335; *Davie* v. *Lumberman's Mining Co.*, 93
Mich. 491.)   The contract cannot be specifically enforced for
want of mutuality.   (Civ. Code, sec. 3386; *Sturgis* v. *Galindo*,
59 Cal. 38; 3 Pomeroy's Equity Jurisprudence, sec. 1405.)
Injunction will not lie in such case.   (Civ. Code, sec. 3423,
subd. 5.)

CHIPMAN, C.—Plaintiff alleges in his complaint that he
is the proprietor of the Hotel Langham, situated in the city

[1] 20 Am. Rep. 475.                    [3] 51 Am. Rep. 1.
[2] 48 Am. St. Rep. 98.

of San Francisco, and prior to November 9, 1899, he lighted said hotel by electricity; that on that day defendant persuaded him to discontinue the use of electricity and use gas, to be furnished by defendant instead thereof; that he expended considerable money in supplying gas-fixtures, induced thereto by the agreement of defendant to furnish plaintiff gas for said hotel at a price not to exceed sixty-five cents per thousand cubic feet "while the same was used in said Hotel Langham." There are also allegations as to irreparable injury and inadequacy of remedy at law. Prayer that defendant be "required faithfully and honestly to carry out its contract with plaintiff, . . . and for that purpose a decree of this court be entered, ordering the defendant to furnish gas to this plaintiff so long as plaintiff will continue to operate and use the same in said Langham Hotel, provided, however, plaintiff shall pay or tender to defendant sixty-five cents per thousand cubic feet for all gas used by him in said hotel. That defendant be restrained . . . from discontinuing furnishing gas to the plaintiff" for use as above and so long as plaintiff shall pay for same as above, and for other and further relief. Defendant denies the allegations of the complaint, and as further answer alleges an agreement in writing of the date of November 9, 1899, between plaintiff and defendant whereby defendant agrees to supply said hotel one hundred and ten incandescent lamps, complete with chimneys, shades, and mantles, and one hundred and fifty open-tipped burners, and "place the said lamps and burners upon fixtures to be designated by the said John Gallagher [plaintiff], it being understood that the only charge to be made by the party of the first part [defendant] at the time of the installation of the above-mentioned lamps and tips is to be a charge of twenty cents for each and every mantel so installed"; that title in the lamp and tip-burners was to remain in defendant, and plaintiff "shall give them [defendant] timely notice in case of discontinuance of the gas or removal, so that the Equitable Gas Light Co. may remove said lamps and tips from said premises"; that said party (plaintiff) "agrees to take from the party of the first part [defendant] gas for use in said Langham Hotel and on said premises, and pay therefor at the rate of sixty-five cents per thousand cubic feet, . . . whenever

the said . . . company shall present the bills for same''; also, that he agreed to comply with the rules of defendant and allow its employees free ingress to the pipes and meters. It is averred that this is the only agreement entered into, but that after said agreement had been signed by defendant there was indorsed upon the same, without the knowledge or consent of defendant, a clause as follows: ''The party of the first part agrees that the price of said gas sold to the party of the second part shall not exceed the price of sixty-five cents per thousand cubic feet while in use in said Hotel Langham.'' It is further averred that defendant's regular rates for gas prior to May, 1899, was one dollar per thousand cubic feet, and that after said date it reduced the rate to sixty-five cents per thousand cubic feet, and that price was in force on November 9, 1899, and continued until April 1, 1900, ''at which time defendant increased the price of gas to all its customers to one dollar per thousand cubic feet,'' at which rate plaintiff was requested to pay after said date but plaintiff refused to do so, and thereupon, and not otherwise, defendant threatened to discontinue serving plaintiff with gas in said hotel; denies refusing to furnish gas to plaintiff provided he pay the rate charged all defendant's customers.

The court found against plaintiff on his allegation that defendant agreed to furnish gas at the price named so long as plaintiff might use it in said hotel; it also found that about May 14, 1900, defendant demanded from plaintiff pay for gas on and after April 1, 1900, at the dollar rate, which defendant refused to pay, and refused to pay any higher rate than sixty-five cents. The court, in effect, found that the provision indorsed on the written contract after it was signed by defendant was not executed by defendant and was not its agreement. Judgment passed for defendant accordingly. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

The only witnesses were plaintiff, E. F. Cheffens, solicitor and collector of defendant, and S. H. Tacy, secretary of defendant. Cheffens testified that he went to plaintiff in November, 1899, to solicit his custom, and showed him the usual form of contract; that plaintiff was not satisfied with the form and wished further time to consider the matter; witness

went back once or twice more, "and explained just what would have to be done"; that a special contract was drawn up; witness brought to plaintiff the contract in question, bearing the signature of defendant by Tacy, secretary, with the company seal attached. Plaintiff testified that he objected to the contract because it contained no clause, which plaintiff had previously insisted upon, relating to the price remaining at sixty-five cents per thousand cubic feet, and that Cheffens said: "I will have to put that in for you," and thereupon wrote the word "over," which appears near the bottom of the first page and at the left of the company signature, and also wrote the clause above quoted, which appears on the next page of the contract. Plaintiff testifies that he did not sign until after this indorsement. Cheffens testified: "When I first went to see Mr. Gallagher I carried him a printed contract which I left him to look over. I saw him again and he said that he was willing for the company to put in its gas, and that it was to be sixty-five cents for the whole time it was there. I do not remember how many times I visited Mr. Gallagher; I do not remember the general purport of any conversation. I do not remember that he would take it if we furnished it continuously for sixty-five cents per thousand cubic feet; I do not deny it; I do not affirm it. My recollection on that point is indistinct."

"Q. You swear positively that you wrote this in Mr. Gallagher's presence after the contract was signed by him?

"A. Not by him, but by the company, and the seal of the company was on it.

"Q. But he signed it after you wrote that, did he not?

"A. That I do not remember."

He testified that he took the contract, when signed, back to Secretary Tacy, and laid it on his desk, but did not call his attention to the change made in it. Tacy testified: "When Mr. Cheffens returned the contract to the office, it was then that I examined it and placed it in the safe, and it stayed there until Mr. Gallagher came to the office in April. I am general custodian of all the papers and records of the company, and all the contracts come there. It is my duty to look over all contracts. I do not know that it is my duty to pass upon them, but if a contract has been signed and delivered, and it is

necessary for me to do anything of that kind to it, I naturally see that I have done my part and file it away." In explaining what he did he said: "I opened it to see if Mr. Gallagher's signature was there, and then I put it in the vault. I unfolded it in this manner [indicating], and saw Mr. Gallagher's signature, and folded it back in this way [indicating], and put in the envelope, where we keep contracts, and put in the safe." Further explaining, he said: "I opened it and had my thumb on the word 'over' and did not see it." Cheffens testified: "Immediately to the left of John P. Gallagher's signature, about one-half an inch distance was the word 'over' written in a plain, bold, distinct, and perfectly legible handwriting. On the back or reverse side of the same sheet of paper about one quarter of the way down the page was written, in the same plain, bold, distinct, and perfectly legible handwriting the following clause" (the clause in question). It is undisputed that it was in this condition when delivered to plaintiff and to Secretary Tacy. Cheffens testified that he "had charge of and solicited contracts generally with everybody and anybody for the company, never made any special contract like this one. We had a simple form which the consumers would sign and I would hand it in to the company. Would carry around a contract for sixty-five cents and get people's signatures to it, and would hand it in to the company."

I think the evidence shows that Cheffens was the ostensible if not the actual agent of defendant in this matter. (Civ. Code, secs. 2316, 2317, 2330.) I think, also, that defendant must be charged with knowledge of all the provisions of the contract, because it had the means of such knowledge, of which it carelessly and negligently deprived itself. (Civ. Code, secs. 2330, 2332; *Merrill* v. *Pacific Transfer Co.*, 131 Cal. 582; *Shain* v. *Sresovich,* 104 Cal. 405.) If, as is argued, Cheffens was not defendant's agent with authority to make the contract, it became all the more incumbent on Secretary Tacy to examine the contract for himself, and his dereliction in failing to do so only re-enforces the reasons for holding that defendant is charged with knowledge of the contract acted upon by both parties. If the change made by Cheffens to suit plaintiff may be regarded as a rejection of the contract as originally proposed to plaintiff and as a new proposal by

CXLI. Cal.—45

plaintiff, the voluntary acceptance by defendant of this proposal and its acting under it would constitute it a contract binding upon defendant. (Civ. Code, secs. 1584, 1589; *Bloom v. Hazzard,* 104 Cal. 310.) We think the objection that the findings in these particulars are not supported by the evidence is well taken.

Respondent objects that the time clause of the contract is void for want of mutuality; that if it can be construed as an obligation by defendant to furnish gas for a definite period of time, it is void because plaintiff does not agree to take gas for such a definite period, and for like reasons the time clause is void for uncertainty. It is also claimed by respondent that the contract cannot be specifically performed because not mutual, and if it cannot be specifically performed injunction will not lie. These several points may be considered together. Under section 629 of the Civil Code a corporation supplying gas "Upon the application in writing of the owner or occupant of any building . . . must supply gas as required for such building," and by section 632 of the same code it is provided that the corporation "may shut off the supply of gas from any person who neglects or refuses to pay for the gas supplied." In *Capital Gas Co.* v. *Young,* 109 Cal. 140, the court said: "Under section 629 of the Civil Code the respondent was bound, upon proper demand, to furnish gas to the city. . . . Under the operation of this law the gas company was not a free agent with power to contract or refuse to do so, but it became its duty, upon demand, to furnish gas to the city irrespective of the *status* of its president. This duty to furnish gas to the city devolved upon the respondent, not by virtue of any contract, but by operation of the law, and hence the law governing ordinary contracts resting on the volition of the parties has no application." In *Visalia Gas etc. Co.* v. *Sims,* 104 Cal. 326,[1] where the company undertook to free itself from the responsibility of operating its plant by leasing it to one Lynch, the court said: "That plaintiff having availed itself of the franchise granted it by the city of Visalia, it became its legal duty to operate its gas and electric works, and to supply the inhabitants with gas and electricity," and could not lease its works to Lynch.

[1] 43 Am. St. Rep. 105.

The evidence is, that defendant's mains run through the streets within less than one hundred feet of plaintiff's hotel; that plaintiff was solicited by Cheffens, who urged defendant to discontinue lighting the hotel with electricity and take defendant's gas, and plaintiff told Cheffens if he took the gas it was to be sixty-five cents for a thousand cubic feet "for the whole time it was there"; that after the contract was signed the electric lamps, meters, etc., were taken out, and the use of electricity discontinued, and defendant's appliances were substituted.

Plaintiff testified: "I paid out considerable money for some of the fixtures," and the contract required him to pay twenty cents each for mantles, and both parties acted under the contract from November until the following April, when defendant notified plaintiff of the raise in price. By the terms of the contract plaintiff "agrees to take from the party of the first part gas for use in said Hotel Langham, and on said premises, and to pay therefor at the rate of sixty-five cents per thousand cubic feet," and defendant "agrees that the price of gas sold to the party of the second part shall not exceed sixty-five cents per thousand cubic feet while in use in said Hotel Langham." Plaintiff took the gas under the contract, and still desires to take it, and has faithfully kept his agreement; he discontinued the use of electricity, and prepared for the use of gas at some considerable expense. These facts show consideration. There was a mutual exchange of promises—promise for promise—which will support each other, unless one or the other is void. (*Siddall* v. *Clark,* 89 Cal. 321.) The contract was mutually performed for several months, and was in course of execution when the suit was brought. By bringing the action plaintiff put himself under the obligation of the contract. (*Sayward* v. *Houghton,* 119 Cal. 545; *Spires* v. *Urbahn,* 124 Cal. 110.) We do not think it was necessary to mutuality that the contract should name a definite period of time for its continuance. It is unlike the case of an offer to sell personal property at a stated price where the buyer does not agree to purchase or bind himself at all, as in the cases cited by respondent. Nor do we construe the action as being essentially one for specific performance, except as it incidentally seeks to enforce plaintiff's rights in

the premises. (*Sayward* v. *Houghton,* 119 Cal. 545.) There can be no question that the intention was that plaintiff would take gas from defendant, for he expressly agreed so to do, and that defendant should supply it at the rate agreed upon, as long as plaintiff should use it, for defendant so expressly agreed, and so long as plaintiff took the gas defendant could compel payment at the agreed rate. It was indeed not necessary that defendant should agree to supply the gas, for this was its duty under the statute. It could only fix the rate and enforce reasonable regulation as to 'the service. The obligation of defendant to supply property-owners within the statutory limits of defendant's mains, as we have seen, results from the statute, and not from contract. The provisions of section 632 of the Civil Code imply that the gas corporation cannot shut off the supply of gas so long as the consumer does not refuse or neglect "to pay for the gas supplied . . . by the corporation, *as required by his contract.*" The contract being shown, and plaintiff having complied fully with its terms, and averring readiness to continue to take gas and ability to pay for it, injunction will lie. (*Sickles* v. *Manhattan Gas Light Co.,* 64 How. Pr. 33; *Xenia Real Estate Co.* v. *Macy,* 147 Ind. 568; *Mackin* v. *Portland Gas Co.,* 38 Or. 120.) In this latter case it was stated: "The right of a court to compel by *mandamus* a company engaged in furnishing gas for general consumption to supply all persons along its mains or conduits who offer to and do comply with its rules and regulations is undoubted and unquestioned." (Citing cases.) The other two cases above cited are proceedings by injunction. In *Sickles* v. *Manhattan Gas Light Co.,* 64 How. Pr. 33, the action was to have the amount due the company ascertained, and that the company be restrained from removing the meter or cutting off the supply of gas. It was held that when a dispute arises between the company and a consumer the latter is entitled to have his rights investigated by the courts, and that an injunction will be granted to prevent the cutting off of the supply of gas until 'the cause can be tried. In that case it did not appear that there was any contract as to the rate, and presumably the rate was that charged generally to customers, and there was no agreement to take the gas for any specified time. The contract in all such cases

is, that the consumer shall pay the usual rate so long as he uses the gas. There can be no difference between such a case and one where the company has agreed with a consumer as to the rate in his particular case. In enforcing such a contract in the case of a gas corporation operating under such a statute as ours, it is not an action for specific performance in strict sense. If injunction would lie in the Sickles case, it will also lie in the case here. The subject is quite fully discussed in *Xenia Real Estate Co.* v. *Macy,* 147 Ind. 568. *Whiteman* v. *Fuel Gas Co.,* 139 Pa. St. 492, is cited, where the court held that a mandatory injunction would be awarded at least to restore the *status quo.* In both these cases there was consideration shown for the agreement to take gas, and the companies agreed to furnish the gas at a rate fixed by the contract, but in neither of them did the consumer agree to take the gas for any definite period of time. There was a definite period within which the gas companies agreed to supply gas, but no express agreement that the consumers should take gas for that or any definite period. It was urged that specific performance could not be enforced, and therefore injunction would not lie. But it was held that this contention could not be maintained. It was also held in this class of cases that there was no complete and adequate remedy at law. So held, also, in the Sickles case, 64 How. Pr. 33.

The judgment and order should be reversed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.