[Civ. No. 1511. Third Appellate District.—May 25, 1916.]

JOE HAY, Respondent, v. MARTIN E. CASEY et al., Appellants.

VENDOR AND PURCHASER—DEFAULT OF VENDEE—WHEN ENTITLED TO RETURN OF MONEY PAID.—A vendor after a breach of a contract of sale by the vendee, may agree to a mutual abandonment and rescission of the contract, and in such a case, the vendee is entitled to a repayment of the moneys paid.

ID.—AGREEMENT CANCELING CONTRACT—REPAYMENT OF VENDEE—SUFFICIENCY OF EVIDENCE.—An agreement made between a defaulting vendee and the vendor canceling the contract of sale, and giving a third party a thirty-day option to sell the property, and providing that the vendee shall be repaid out of the money fixed as the sale price, the amounts paid by him under the contract, and that in the event that the sum be not paid the vendee shall receive nothing and shall have no further claim in the property, is not a waiver of the rights of the vendee, in the event of a failure of the third party to make the sale, as there is no consideration for the waiver, and where the vendor afterward makes a sale of the property, and orally promises to repay the vendee when the sale is made, the vendee is entitled to recover.

APPEAL from an order of the Superior Court of Yuba County denying a new trial. Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

Richard Belcher, and W. H. Carlin, for Appellants.

Britton & Raish, and Wetmore & Davies, for Respondent.

HART, J.—On February 13, 1909, a written agreement was entered into between the parties to this action, by the terms of which appellants agreed to sell and respondent agreed to buy, for the sum of seven thousand five hundred dollars, certain real property in the city of Marysville. Nine hundred dollars was paid by respondent at the time of the execution of the agreement, the balance being payable in monthly installments. In addition to the first payment of nine hundred dollars, plaintiff claims to have paid nine hundred dollars, and defendants admit receiving eight hundred dollars, but whether during the life of said contract or under

a succeeding one does not clearly appear. On the 4th of March, 1910, a second contract was entered into for the sale of the property, at a consideration of $5,893, payable in installments. Default being made by plaintiff in all or some of these payments, on May 23, 1910, a third contract was executed, the purchase price being specified as $5,916. On this contract also default was made by plaintiff.

On October 22, 1910, appellant, Martin E. Casey, as party of the first part, J. Ross Traynor, as party of the second part, and respondent, Joe Hay, as party of the third part, entered into a written agreement by which said Traynor was given a thirty-day option to sell said property for the sum of eight thousand dollars, and appellant, Martin E. Casey, and respondent therein agreed that the contract of May 23, 1910, "shall be and hereby is canceled and declared null and void. . . . In consideration of which said party of the first part agrees to pay said party of the third part," out of said eight thousand dollars, the sum of one thousand eight hundred and fifty dollars, less certain bills for lighting, water, taxes, etc. "In the event said eight thousand dollars be not paid in accordance with this agreement said party of the third part shall receive nothing and shall have no further right, title, claim, or interest in or to any part of said land, premises, or personal property."

In each of the above-mentioned contracts time was made of the essence.

On January 25, 1911, appellants entered into an agreement with one T. J. Tyrell for the sale of said property for the sum of six thousand dollars, and, on April 21, 1911, pursuant to said contract, the property was deeded to one Barney Van Buskirk.

In the complaint it is alleged: "On or about the 9th day of February, 1911, and while said plaintiff was in possession of said real property under said contract as aforesaid (the contract of February 13, 1909), said plaintiff and defendants entered into an agreement whereby plaintiff agreed to cancel and rescind the said contract hereinabove referred to in consideration of the payment to plaintiff by defendants of all the sums of money paid by plaintiff to defendants, together with the sums of money expended by said plaintiff in repairing and improving said real property amounting in

all to the sum of $2,870.00,'' and the complaint prays judgment in that amount.

In their answer defendants denied that they entered into the agreement, above quoted, to pay plaintiff the sum of $2,870, or that plaintiff rescinded the contract of February 13, 1909; but they allege that the payments provided for in the contract of October 22, 1910, to be made by said Traynor, were never made by him, ''and at the expiration of the time in said agreement provided, defendant Casey exercised his right and declared the same forfeited and null and void.''

The court found that, under the contract of February 13, 1909, plaintiff entered into possession of the property and remained therein continuously until January 25, 1911, and that ''defendants had and received of the plaintiff, under said contract, the sum of $1,700.00.'' Finding No. 5 is: ''That on or about the 4th day of March, 1910, the said plaintiff and defendants mutually agreed to rescind the contract of February 13, 1909.'' There are similar findings as to the contracts of March 4, 1910, and May 23, 1910. Respecting the Traynor contract, of October 22, 1910, the court found ''that there was no consideration for the waiver of the rights of plaintiff contained in said contract'' and ''at no time did the defendants or either of them declare a forfeiture of any of the contracts referred to. 11. That in the month of December, 1910, the plaintiff delivered the keys of said premises unto said defendants at their request, and upon their promise to repay to plaintiff the said sum of $1,700.00 when the said premises were sold by said defendants; and that the plaintiff was permitted to remain in possession thereafter until on or about the 25th day of January, 1913 (1911?). 12. That said defendant, Martin Casey, repeatedly promised to repay to. plaintiff all monies paid by plaintiff under said contract, as soon as the said premises were sold by said defendant.'' The court also found that the cause of action was not barred by the provisions of either section 339, subdivision 1, or section 1668 of the Code of Civil Procedure.

Judgment was entered in favor of plaintiff for the sum of one thousand seven hundred dollars and defendants appeal from an order denying their motion for a new trial.

Appellants claim that, on November 22, 1910, thirty days after the execution of the tripartite agreement between Traynor and the parties to this suit, ''plaintiff's right to the

property terminated by his own agreement," and that whatever he paid on the purchase price defendants properly retained as liquidated damages.

Respondent cites *Drew* v. *Pedlar*, 87 Cal. 443, [22 Am. St. Rep. 257, 25 Pac. 749], where the supreme court declared, as stated in the *syllabus:* "The stipulation in the contract that the purchase-money paid should be taken as liquidated damages for the breach of the contract by the purchaser is void under sections 1670 and 1671 of the Civil Code, it not being impracticable or at all difficult to fix the actual damage to the vendors, the measure of which is definitely fixed by section 3307 of the Civil Code as the excess of the agreed price, if any, over the value of the property to the vendors."

This is answered by appellants by citing *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], where the case of *Drew* v. *Pedlar* is distinguished and it is said: "Where time is expressly made of the essence of the contract, equity will not ignore the provision, for equity follows the law, and will neither make a new contract for the parties nor violate that which they have freely and advisedly entered into." But the court also said in that case: "It has been said that after the vendee's breach the vendor may agree to a mutual abandonment and rescission, in which last instance and in which alone, the vendee in default would be entitled to a repayment of his money." It is the claim of respondent that this quotation is exactly applicable to the case at bar.

The transcript of the testimony is far from satisfactory, though probably defendants are free from blame in the matter. The plaintiff is a Chinese and testified without an interpreter. His testimony, in some respects, seems confused, but he testified that, after the sale of the property to Van Buskirk, appellant, Martin E. Casey, many times promised to pay him as soon as he received the purchase money from Van Buskirk. The witness, Traynor, said that on several occasions Casey told him "he would do right with Joe Hay" and "he would return Joe what money he had paid."

Appellant, Martin E. Casey, testified on direct examination that he agreed to pay Joe Hay one thousand eight hundred dollars if the property was sold for eight thousand dollars and "outside of that I know of no promise I have made to Joe Hay to repay any money at all." On cross-examina-

tion he said: "I don't remember making any direct promise at all. I don't remember whether I made a promise to Joe Hay in the month of February or the month of March."

We think the trial court was justified in finding: "That said defendant, Martin Casey, repeatedly promised to repay to plaintiff all moneys paid by plaintiff under said contract, as soon as the said premises were sold by said defendant," and also in finding that "at no time did the defendants or either of them declare a forfeiture of any of the contracts referred to."

Appellants claim that the testimony of plaintiff and of Traynor shows that any promise by appellant, Martin E. Casey, to repay plaintiff was made in November, 1910, but it is clear that such promises were made at a later time. Plaintiff testified: "Mr. Casey promised to pay me but he never paid me any. I asked him several times but he said the man didn't pay him yet. I had reference to Barney Van Buskirk." And Traynor testified: "I believe I talked with Mr. Casey about three days before the property was actually sold. That was why I asked him if he sold this property would he do right by Joe Hay and he said he would."

The complaint in this action was filed February 6, 1913. As the sale to Van Buskirk was made on the twenty-first day of April, 1911, the statute of limitations did not begin to run against plaintiff until that date.

The order appealed from is affirmed.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 24, 1916. Shaw, J., dissented from the order denying a hearing in the supreme court, and on July 24, 1916, filed the following opinion thereon:

SHAW, J.—I dissent from the order denying a rehearing in the supreme court. There is no support in the evidence for the finding of the trial court "that there was no consideration for the waiver of the rights of plaintiff contained in said contract," meaning the contract of October 22, 1910, between Martin E. Casey, J. Ross Traynor, and the plaintiff

Joe Hay. The contract itself shows a valuable consideration in the mutual agreements of the respective parties. (*Gallagher* v. *Equitable G. L. Co.,* 141 Cal. 699, 707, [75 Pac. 329] ; *Siddall* v. *Clark,* 89 Cal. 321, [26 Pac. 829].)   It was a complete novation and a settlement of all previous transactions and obligations between Hay and Casey. The condition therein stated upon which the money was to be paid to Hay never happened and never can happen. The obligation is at an end. Unless it has suddenly become the law that contracts made freely and for a valuable consideration do not fix the rights of the parties under it, the decisions of the trial court, of the district court of appeal in affirming that judgment, and of this court in denying a rehearing, are erroneous.