[Civ. No. 2728.    First Appellate District, Division Two.—February 24, 1920.]

## C. N. BEAL, Appellant, v. THE UNITED PROPERTIES COMPANY OF CALIFORNIA et al., Respondents.

[1] PLEADING—FORECLOSURE OF EQUITABLE LIEN—ALLEGATION OF DEFAULT ESSENTIAL.—The complaint in an action to declare and foreclose an equitable lien is insufficient where it does not contain an allegation of default.

[2] SPECIFIC PERFORMANCE—AGREEMENT TO ISSUE BONDS SECURED BY DEED OF TRUST—UNCERTAINTY AS TO MATERIAL TERMS.—An agreement calling for the delivery by a corporation of certain of its first mortgage fifty-year bonds, secured by a deed of trust "in due and legal form," covering all the real and personal property then owned or thereafter acquired by the corporation, the personal property to be deposited with some trustee, but which does not provide who this trustee should be or what duties it was to perform, how the pledged property should be sold in event of default, or what remedy the bondholders should have in event of default, is too uncertain and indefinite in its material terms to be specifically enforced.

[3] ID.—REQUIREMENT OF CERTAINTY AS TO CONTRACTS—SCOPE OF.— The requirement of certainty as to contracts in order that they may be specifically enforced extends not only to the subject matter and purpose of the contract, but to the parties, consideration, and even the place and time of performance, where these are essential.

[4] ID.—DESCRIPTION OF PROPERTY—CERTAINTY REQUIRED.—It is essential that a complaint seeking specific performance of a contract for the conveyancing, mortgaging, or leasing of property shall specifically define the property agreed to be covered, or at least that it shall state sufficient facts to establish the basis upon which such description may be made certain by extraneous evidence.

[5] ID.—AGREEMENT TO GIVE BONDS — ENFORCEMENT BY GIVING OF SECURITIES PAYABLE IMMEDIATELY.—Where all the allegations of the complaint in an action to compel the specific performance of an oral contract tend to support a contract calling for the issuance to plaintiff of fifty-year bonds of the defendant corporation secured by a deed of trust, the court cannot make a new and separate contract with the parties whereby the plaintiff may receive evidences of indebtedness, which would be payable forthwith and enforceable through the foreclosure of a lien upon the personal property of the corporation in direct opposition to the

rights of the parties as they would have been fixed under the terms of the proposed deed of trust.

[6] PLEADING — ACTIONS AT LAW FOR FRAUD AND IN EQUITY FOR SPECIFIC PERFORMANCE—MISJOINDER.—An action at law for fraud growing out of the breach or nonperformance of a contract cannot be joined in a suit in equity for specific performance of the contract or to foreclose an equitable lien. This is especially true where plaintiff has first availed himself of his equitable remedy.

[7] ID.—ACTION ON BEHALF OF CORPORATION — MISJOINDER WITH CAUSE OF ACTION ON OWN BEHALF.—An action on behalf of a corporation to secure the return to the corporation of assets alleged to have been improperly distributed or dissipated by those in control of the corporate affairs cannot be joined with an action brought in plaintiff's own behalf wherein he is seeking personal relief.

[8] CONTRACTS—BREACH OF AGREEMENT TO ISSUE BONDS—RIGHT TO SUE FOR MONEY.—Where the corporation failed to perform its oral agreement to issue to plaintiff certain bonds, secured by a deed of trust on its property, plaintiff, without seeking specific performance, could have treated the oral contract as a direct promise to pay money, sued on it as such, and had his lien to aid in enforcing the judgment.

[9] LIENS—IMPERFECT ATTEMPT TO EXECUTE—EQUITY—STATUTE OF LIMITATIONS.—While a court of equity, upon a proper showing, will create a specific lien on the property intended to be hypothecated, and enforce the same, where a party agrees to give a mortgage or lien on property, and imperfectly attempts to execute such mortgage or lien, upon a valuable consideration received, such relief will be granted only as incidental to the enforcement of the principal obligation; and where such principal obligation is barred by the statute of limitations, equity cannot declare and enforce a lien.

[10] ID.—FAILURE OF CORPORATION TO PLEAD STATUTE OF LIMITATIONS —RIGHT OF PROPERTY OWNERS TO PLEAD.—In an action against a corporation and others to whom it transferred certain of its property to compel the specific performance of an oral agreement by the corporation to issue certain bonds, secured by a deed of trust covering all its property, by the creation of a specific lien on the property, the present owners of such property may plead the statute of limitations, though the corporation fails to plead it.

[11] PLEADING — AMENDMENTS OF COMPLAINT — DISCRETION.—Where, five months after the original complaint was filed, an amendment was filed, and four months later an amended complaint was filed,

8. Recovery for breach of agreement to deliver specified articles in payment of contract, note, Ann. Cas. 1916A, 965.

and then five months later, after demurrer to the amended complaint was sustained, an amended and substituted complaint was filed and the only cause of action stated in that complaint was barred by the statute of limitations and the laches of the plaintiff, the trial court did not abuse its discretion in denying to plaintiff leave to further amend his complaint.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fabius M. Clarke and Tirey L. Ford for Appellant.

McWilliams & Hatfield, Morrison, Dunne & Brobeck, McKee & Tasheira, R. P. Henshall, H. W. Clark and Lilienthal, McKinstry & Raymond for Respondents.

NOURSE, J.—This action, like that of *Beal* v. *Smith et al., ante,* p. 271, [189 Pac. 341], involves the transactions growing out of the organization of the United Properties Company in December, 1910.   The demurrers of the several defendants to the amended complaint were all sustained without leave to amend, and judgment entered in their favor. The appeal is taken from this judgment and the parties have stipulated that the briefs filed in both actions may be considered on each appeal.

The amended complaint alleges that on the sixth day of March, 1911, plaintiff was the owner of first mortgage bonds of the Sierra Water Supply Company and of a claim against such company of the total value of one hundred and fifty thousand dollars; that on said day the United Properties Company agreed to deliver to him therefor one hundred and fifty thousand dollars in its first mortgage and collateral trust five per cent fifty-year sinking fund gold bonds, to be secured by a deed of trust to be thereafter executed covering all the real and personal property of the United Properties Company; that between the sixth and twentieth days of March, 1911, in compliance with said agreement, plaintiff assigned and delivered to the United Properties Company his bonds and the claim against the Sierra Water Supply Company; that in April, 1911, the United Properties

46 Cal. App.—19

Company issued to him bond certificates, the material feat-
ures of which are that the company on the surrender of
the certificates promised to issue to the bearer first mortgage
and collateral trust five per cent fifty-year sinking fund
gold bonds, ''to be issued under and secured by the deed of
trust in preparation, dated January 1, 1911, made by said
The United Properties Company of California, and to be
delivered hereunder as and when the said bonds may be
certified, issued and ready for delivery.'' Such certificates
called for the issue to plaintiff of one hundred and fifty of
said bonds of the par value of one hundred and fifty thou-
sand dollars. It is alleged that neither the bonds nor the
deed of trust were ever executed, and that from time to
time covering a period, at one time alleged to have ended
on the twenty-fifth day of January, 1913, and at another
time alleged to have ended in the month of March, 1914, the
United Properties Company represented to plaintiff that said
bonds and said deed of trust were in course of preparation
and that they would soon be executed and the bonds de-
livered to him on the surrender of his bond certificates.
In pursuance of a scheme and design to defraud the plaintiff
and to cause him to rely upon said promises, so it is alleged,
the United Properties Company paid to him on the first days
of July, 1911, January, 1912, and July, 1912, the amounts
of money that he would have been entitled to receive on said
days as interest on the bonds if the same had been executed
and delivered to him. Also that plaintiff fully believed and
relied upon these promises until May, 1914, although in
another portion of the complaint it is alleged that long prior
to that time plaintiff, having made a personal investigation
of the affairs of the company, had discovered a gigantic
conspiracy on the part of the promoters of the concern to
defraud the company and the holders of its stocks and
securities, other than the said promoters. It is then alleged
that plaintiff had not received any of said bonds and had
not received or been paid any part of the said one hundred
and fifty thousand dollars, and that the same is still due,
owing, and unpaid. The remainder of the complaint is a
long story of a conspiracy on the part of the promoters of
the corporation, Smith, Tevis, and Hanford alleging that
the organization of the company was conceived in fraud and
that all the transactions of the promoters, and those acting

under them, were a fraud upon the corporation and the other holders of its stock and securities. These allegations are all made upon information and belief, with some feeble attempt to state the sources of the information and the grounds of the belief.

Treating the appeal in the same manner as would be done by a trial court in the consideration of the demurrers, as the grounds for the order sustaining them are not stated, it is first necessary to determine what are the equities of plaintiff's case.

It is strenuously argued in the briefs of the respondents that the complaint attempts to state several causes of action which it is claimed are improperly joined. Thus, it is argued that the allegations of the complaint tend to support three separate causes of action personal to plaintiff and one, on behalf of the United Properties Company, as follows: (1) A cause of action to declare and foreclose an equitable lien upon property formerly owned by the United Properties Company; (2) a cause of action for the specific performance of an oral contract; (3) a cause of action for damages for fraud growing out of the failure to perform the same contract; and (4) a cause of action to recover on behalf of the corporation assets of the corporation which are alleged to have been illegally disposed of. It is stated in the complaint that the suit was instituted in behalf of all other lien claimants similarly situated with plaintiff who chose to join with plaintiff, but as the record does not disclose that any others joined, this matter may be dismissed from consideration. It becomes necessary first to determine whether the allegations of the complaint are sufficient to support any cause of action.

[1] (1) Taking the first-mentioned cause of action—that to declare and foreclose an equitable lien—in so far as the foreclosure is concerned, the complaint is lacking in one of the essential features of such an action, which is an allegation of default. This complaint alleges an oral agreement to deliver to the plaintiff 150 first mortgage bonds of the par value of one thousand dollars each, dated January 1, 1911, to be "due and payable fifty years after the date thereof." The bond certificates issued to plaintiff in April, 1911, and which he argues are written evidences of its oral agreement, also provide for the issuance of fifty-year bonds,

secured by a deed of trust which was to be dated January 1, 1911. Though it is alleged that three semi-annual payments of interest were received by the plaintiff, it is not alleged that this was all the interest that he received, or, in fact, that all interest payments were not made to him semi-annually as called for by the original agreement. Furthermore, it is not alleged that the corporation had defaulted in any of the interest payments, or that the company was insolvent or unable to pay the interest. Thus, if plaintiff is entitled to an equitable lien in accordance with his agreement of March, 1911, he cannot foreclose on such lien unless there has been a default. There are no allegations in the complaint from which it could be inferred that such default has occurred.

[2] In seeking to subject the personal property to a lien plaintiff is in effect asking for the specific performance of his contract of 1911. This contract, it is alleged, called for the delivery to plaintiff of 150 of its one thousand dollar first mortgage fifty-year bonds, secured by a deed of trust "in due and legal form," covering all the real and personal property then owned or thereafter acquired by the United Properties Company, the personal property to be deposited with some trustee. Thus, the complaint attempts to set up an indivisible contract—one calling for the issuance of bonds and the execution of a deed of trust with the delivery of the trust property into the hands of trustees. The court cannot decree that that portion only of such contract which is favorable to plaintiff may be enforced. Unless the contract as a whole, or at least its pertinent features, can be enforced, plaintiff is not entitled to specific performance. Section 3390, subdivision 6, of the Civil Code prohibits the specific enforcement of "an agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." All that is alleged as to the contents of the proposed deed of trust is "that said bonds should be secured by a deed of trust in due and legal form, which deed of trust should constitute a first mortgage and lien upon all real and personal property then owned or which might thereafter be acquired by said United Properties Company," and that all stocks, bonds, and securities of other corporations which said United Properties Company then owned or might thereafter acquire, in addition to being

covered by said deed of trust, should be deposited with the
trustee to be appointed in said deed of trust. But it is not
alleged who this trustee should be or what duties it was to
perform, how the pledged property should be sold in event
of default, or what remedy the bondholders should have in
event of default of interest. This brief statement of the
contents of the proposed deed of trust would not justify any
court in decreeing the execution of the deed. The objection
here is not that the complaint is uncertain in respect to these
allegations, but that it fails to state sufficient facts because
it fails to set forth the terms of the contract which is sought
to be enforced. "A contract that is incomplete, uncertain or
indefinite in its material terms will not be specifically enforced
in equity." (Pomeroy's Equitable Remedies, 4th ed., sec.
764; *Los Angeles etc. Co-operative Assn.* v. *Phillips,* 56 Cal.
539, 546, 547; *Klein* v. *Markarian,* 175 Cal. 37, [165 Pac.
3]; *Wineburgh* v. *Gay,* 27 Cal. App. 603, [150 Pac. 1003].)
[3] "The requirement of certainty as to contracts in order
that they may be specifically enforced extends not only to the
subject matter and purpose of the contract, but to the parties,
consideration, and even the place and time of performance,
where these are essential." (25 R. C. L., p. 219.)

[4] Under this rule it is essential that a complaint seek-
ing specific performance of a contract for the conveyancing,
mortgaging, or leasing of property shall specifically define
the property agreed to be covered, or at least that it shall
state sufficient facts to establish the basis upon which such
description may be made certain by extraneous evidence.
Here, although it is claimed that the bonds were to be se-
cured by a deed of trust covering both real and personal
property, there is no allegation that the United Properties
Company ever owned any real property. The complaint does
allege on information and belief that at the time of the
agreement the United Properties Company owned seventy-
five per cent of the total issued shares of the capital stock
of the Oakland Traction Company and the San Francisco,
Oakland & San Jose Consolidated Railway, respectively, and
the total issued capital stock of the East Shore & Suburban
Railway Company, and that thereafter and before August
12, 1912, it became the owner of the following securities and
promissory notes: (a) general consolidated mortgage five
per cent sinking fund twenty-eight year gold bonds of

the Oakland Traction Company; (b) general consolidated mortgage five per cent sinking fund thirty-year gold bonds of the San Francisco, Oakland & San Jose Consolidated Railway; (c) promissory note for two million five hundred thousand dollars, due June 12, 1913; and (d) promissory note for $128,814, the date of maturity not given. It is then alleged ''that *afterward,* by the consolidation of said Oakland Traction Company and said San Francisco, Oakland & San Jose Consolidated Railway and said East Shore & Suburban Railway Company into a corporation hereinafter described, named the San Francisco, Oakland Terminal Railways, the aforesaid capital stocks of said Oakland Traction Company and of said San Francisco, Oakland & San Jose Consolidated Railway and East Shore & Suburban Railway Company, were exchanged for and converted into shares of stock of said consolidated company.''

It does not appear what became of the corporations which were thus consolidated or the stocks of said corporations upon which plaintiff claims he was entitled to a lien, nor does it appear that the stocks of the consolidated company, the San Francisco-Oakland Terminal Railways, became the property of the United Properties Company. As to the securities which it is alleged were acquired by the United Properties Company prior to August 12, 1912, those of the Oakland Traction Company matured in 1935, those of the San Francisco-Oakland & San Jose Consolidated Railway matured in 1938, and the promissory note for two million five hundred thousand dollars matured June 12, 1913. Notwithstanding this, plaintiff claims that all these securities were to be pledged as security for bonds of the United Properties Company, payable January 1, 1961. It is manifest that if the oral agreement contemplated the execution of a deed of trust covering these securities, some provision would have to be made therein covering the loss sustained by the maturity of these securities.

If plaintiff is to have judgment for specific performance of the oral contract, it is necessary that the entire contract of the parties be enforced. Thus, the court must decree that the defendant United Properties Company should not only issue to plaintiff its one hundred and fifty first mortgage bonds, secured by a deed of trust covering the real and personal property, but that it should also execute the deed

of trust to secure the bonds so issued. This, apparently, is the view taken by appellant, as he states that "plaintiff sues in a *representative* capacity; that is for himself and all other bondholders, to establish an equitable lien upon certain property to secure the payment of *all* the lawful bonds." But, as has been pointed out, the allegations of the complaint covering the terms of the proposed deed of trust are so indefinite and uncertain that a court of equity could not possibly enforce its execution. [5] As all the allegations of the complaint tend to support a contract calling for the issuance to plaintiff of fifty-year bonds secured by a deed of trust, naturally the court cannot make a new and separate contract with the parties whereby the plaintiff may receive evidences of indebtedness which would be payable forthwith and enforceable through the foreclosure of a lien upon the personal property in direct opposition to the rights of the parties as they would have been fixed under the terms of the proposed deed of trust. For these reasons the complaint fails to state a cause of action for the declaration of a lien upon the personal property described in the complaint.

(2) What has heretofore been said covers the allegations which tend to support the cause of action for the specific performance of the oral contract of March, 1911. It is unnecessary to consider the effect of the writing contained in the bond certificates issued to plaintiff in April, 1911, because plaintiff does not sue upon the certificates but bases his right of action upon the oral agreement. It should be said, however, that the language of the writing supports the argument that the conversations alleged to have taken place in March, 1911, did not constitute a contract to subject any particular property to a lien or to execute any particular form of a deed of trust, and that such conversations were merely the basis of a contract to be thereafter made and not a contract in themselves. In this writing it was agreed that the bonds which were to be issued to plaintiff would be secured by "the deed of trust in preparation." It seems almost incredible that any man, secured as plaintiff is alleged to have been, would part with his property merely upon the promise of someone connected with the corporation that its equivalent would be delivered to him in exchange, and then when written evidence of the oral promise is made,

would fail to insist that such written evidence should contain the most essential feature of the oral agreement—that is, that the written evidences should recite that the bonds to be delivered to him by the corporation would constitute an enforceable lien upon all the property of the corporation. But appellant says: ''We are not seeking a specific performance of this agreement, but an equitable lien, and the enforcement thereof.''

(3) Plaintiff alleges that by reason of the various acts of which he complains he has been damaged in the sum of three hundred thousand dollars, and prays judgment for that amount. The theory upon which such damages are sought is that certain defendants by fraud induced and enabled the United Properties Company to fail to perform its agreement to deliver to plaintiff his bonds. The allegations in this connection would, if properly pleaded, support a cause of action at law for fraud. No attempt was made to rescind or disaffirm the contract by which plaintiff parted with his property; but, on the other hand, the contract is fully affirmed, and plaintiff seeks damages for its nonperformance. **[6]** Assuming that sufficient facts are alleged to sustain such a cause of action, it is evident that an action at law for fraud, growing out of the breach or nonperformance of a contract cannot be joined in a suit in equity for specific performance of the contract or to foreclose an equitable lien. It is especially true where plaintiff has first availed himself of his equitable remedy. (*Abbott* v. *76 Land & Water Co.*, 161, Cal. 42, 51, [118 Pac. 425] ; *Thresher* v. *Clark*, 45 Cal. App. 518, [188 Pac. 55].) The same rule should apply here. If plaintiff is entitled to specific performance of his contract or to the declaration and foreclosure of an equitable lien, the decree in equity made for that purpose must necessarily adjudicate the rights of the respective parties and would foreclose the plaintiff from an action for damages upon the contract, which is purely an action at law. He has elected to seek the aid of a court of equity and cannot join in such suit an action for damages for fraud.

**[7]** (4) The other phase of the complaint is that plaintiff seeks indirectly the return to the corporation of assets which he alleges were improperly distributed or dissipated by those in control of the corporate affairs. Though he does not al-

lege directly that he is suing on behalf of the corporation for this purpose, he does allege that he is suing on behalf of all the other bondholders similarly situated with him who might choose to join with him, and demands that the assets of the corporation be returned so that they may be subjected to the equitable lien. And, of course, if it is true, as alleged in his complaint, that the terms of the oral contract called for a deed of trust covering all the real and personal property of the corporation then owned or thereafter acquired by it, then it would be proper that all these assets which it is alleged were improperly and illegally dissipated should be returned to the corporation so that they might be included within the deed of trust. It is manifest, however, that he cannot join such an action (wherein he is suing as a trustee of the corporation and in the nature of a guardian) with an action in his own behalf wherein he is seeking personal relief. (*James* v. *Steifer Mining Co.,* 35 Cal. App. 778, 787, [171 Pac. 117].) The complaint is not framed upon this cause of action, and in answer to defendants' argument that it is improperly joined with an action for personal relief, plaintiff denies the intention of making it the basis of a cause of action. A further consideration of the allegations relating to it are, therefore, unnecessary.

[8] There is another phase of the case which has been purposely omitted from the foregoing discussion because it is not presented in any of the voluminous briefs which have been filed on this appeal, and that is that plaintiff, without seeking specific performance, could have treated the oral contract as a direct obligation to pay money, sued on it as such, and had his lien to aid in enforcing the judgment. (*Marshall* v. *Ferguson,* 23 Cal. 65, 69; *Cummings* v. *Dudley,* 60 Cal. 383, 385, [44 Am. Rep. 58]; *Beckwith* v. *Sheldon,* 168 Cal. 742, 746, [Ann. Cas. 1916D, 963, 145 Pac. 97].) [9] And "where a party agrees to give a mortgage or lien on property, or imperfectly attempts to execute such mortgage or lien, upon a valuable consideration received, a court of equity, upon a proper showing, will create a specific lien on the property intended to be hypothecated, and enforce the same." (*Beckwith* v. *Sheldon,* 168 Cal. 747, Ann. Cas. 1916A, 963, 145 Pac. 99].) But equity will grant such relief only as incidental to the enforcement of the original

obligation. "A lien is extinguished by the lapse of the time within which . . . an action can be brought upon the principal obligation." (Civ. Code, sec. 2911.) Thus, where the principal obligation is unenforceable because barred by the statute of limitations and the facts alleged do not support the conclusion that a resulting trust has arisen, equity cannot declare or enforce a lien. The principal obligation was the oral contract for the exchange of the securities, action upon which was barred in two years after it accrued, and this being so, whatever right plaintiff had to an equitable lien growing out of the oral contract was lost before this action was commenced. (*San Jose etc. Bank* v. *Bank of Madera,* 144 Cal. 574, 577, [78 Pac. 5]; *Newhall* v. *Sherman, Clay & Co.,* 124 Cal. 509, 512, [57 Pac. 387].)

The complaint alleges that the agreement was made in March, 1911. The suit was commenced February 24, 1916. Plaintiff excuses his delay by allegations that from time to time he was assured by the United Properties Company that the bonds would be delivered soon and that the deed of trust was in course of preparation. In one portion of his complaint he alleges that these assurances continued down to May, 1914, but the last definite assurance is alleged to have been on January 25, 1913. Then it is alleged that in October, 1912, he commenced a personal investigation of the books of the company which was completed March 1, 1913; that between March 1, 1913, and June 1, 1913, he discovered the scheme to defraud him. In appellant's reply brief it is said: "Plaintiff's *first discovery of frauds* occurred thereafter when he looked into the resources of the 'fraudulent companies,' concerning which nothing definite was discovered until about the month of May or June, 1913." And again, "that plaintiff knew of no fraudulent scheme or intent, and suspected none, prior to his discoveries of May or June, 1913." On March 4, 1913, he filed a written protest with the United Properties Company and the trustees under the deed of trust executed January 25, 1913, wherein the United Properties Company joined with Smith, Tevis, and Hanford in an assignment of all their interests in the securities of the United Properties Company to the trustees. In this protest he demanded that the company commence suit against Smith to compel

him to deliver to the company stocks and securities which he claimed belonged to the company. At that time he knew Smith, Tevis, and Hanford had conveyed all their interest in the United Properties Company to trustees with "full power and authority to deal with the properties and interests so assigned and transferred, as fully as if they were the sole and exclusive owners thereof in their own right." Again, on May 14, 1913, he filed a protest with the trustees against the assignment of Smith to the Mercantile Trust Company of all his securities, including those which it was claimed should have been delivered to the United Properties Company under the promotion agreement. As these securities were a part of the properties which were alleged to have been owned by the corporation in March, 1911, and upon which the equitable lien is sought, it is evident that plaintiff had notice in May, 1913, at least, of the intention of the parties not to perform the alleged oral contract. The semiannual payments of interest were made to him, it is alleged, to induce him to rely on the promises that the company would issue the bonds. But the last of these payments made for that purpose was in July, 1912. In October of that year he became suspicious and started a personal investigation of the affairs of the company.

The foregoing presents the admitted facts evidencing the intention of the company not to perform the alleged oral agreement. But it is alleged that in August, 1911, the United Properties Company conveyed to the Oakland Railways all the stocks of the Oakland Traction Company, San Francisco, Oakland & San Jose Consolidated Railway, and the East Shore & Suburban Railway Company, which plaintiff claims were to be subjected to his lien as security for his bonds. He fails to allege that he did not then have knowledge of this transfer, which was a clear breach of the alleged oral agreement, and construing the complaint as stating plaintiff's case in the manner most favorable to himself, it must be assumed that he had knowledge of the breach at the time of the transfer. And if he had knowledge of this transfer, it · is of little importance that the Oakland Railways was controlled by the United Properties Company. They were separate corporate entities and the transfer of the stock to the Oakland Railways transferred

the title and made it impossible for the United Properties Company to either cover them by a deed of trust or deliver them into the possession of a trustee for the benefit of its bondholders.

In view of all these facts, the allegations that ''plaintiff believed said representations were true, and relied upon said promises and assurances,'' can have no weight. Assuming that the limitation of the statute began to run within a few months after March, 1911, unless tolled by representations made to plaintiff to induce him not to commence suit, the complaint fails to state any facts from which the court could reasonably believe that any such assurances were given credit after June, 1913, as conceded by appellant in his briefs. For these reasons the trial court was justified in sustaining the demurrers on the ground that the suit was barred by the statute of limitations. What has been said regarding the statute of limitations applies to all parties but the United Properties Company, which failed to plead it. [10] The right of the other parties to plead the statute, especially against a complaint which seeks a lien upon property they have acquired, cannot be doubted.

The fact that the time to sue had so expired justified all parties, including the United Properties Company, in assuming that no action would be taken by plaintiff. His acquiescence in the actions of the parties and his long delay in instituting these proceedings are a complete bar—one which under circumstances such as these a court of equity may raise of its own motion.

[11] It appears from the judgment of the trial court that the original complaint was filed on February 24, 1916, that amendments thereto were filed on the twenty-eighth day of July, 1916, that an amended complaint was thereafter filed on the seventeenth day of November, 1916, that demurrers to this amended complaint were sustained on the fifth day of March, 1917, and that the amended and substituted complaint which is involved in this appeal was filed on the twelfth day of April, 1917. On this state of the record it cannot be said that the trial court abused its discretion in denying to plaintiff leave to amend the amended complaint, because, as has been pointed out, the only cause of

action stated under any theory of the case is barred by the statute of limitations and the laches of plaintiff.

The judgment is, therefore, affirmed.

Brittain, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied ɔy the supreme court on April 20, 1920.

All the Justices concurred, except Olney, J., who did not participate.