[Civ. No. 1730.   Third Appellate District.—October 31, 1917.]

ROSE FRANCIS DURST et al., Respondents, v. A. JOLLY
et al., Appellants.

QUIETING TITLE — CROSS-COMPLAINT FOR SPECIFIC PERFORMANCE OF
AGREEMENT TO LEASE — UNENFORCEABLE AGREEMENT.—In this
action to quiet title, where defendant admitted ownership by
plaintiff of the land in question but by cross-complaint sought to
compel the execution of a lease in accordance with an unsigned
memorandum of agreement, it was held that the minds of the parties
had never met, and that the so-called agreement was too indefinite
and uncertain as to the terms of the proposed lease to be specifically
enforced.

CONTRACT — RULE OF CONSTRUCTION — CERTAINTY AND DEFINITENESS OF
AGREEMENT.—The terms of an agreement sought to be enforced
must be ascertained from the instrument itself and not from the
construction put upon it by the pleading demanding its enforcement.

APPEAL from a judgment of the Superior Court of Yuba
County.   E. P. McDaniel, Judge.

The facts are stated in the opinion of the court.

E. Ray Manwell, and John M. Fulweiler, for Appellants.

W. H. Carlin, for Respondents.

HART, J.—The complaint was filed in January, 1915, and
is in the usual form of an action to quiet title, the lands
involved being ranch property in the counties of Yuba and
Placer.

The defendants, A. Jolly, Raphael Jolly, and Mrs. Minnie
Jolly, filed an answer in which they admitted that plaintiffs
were the owners of the lands in question but denied that they
(plaintiffs) were entitled to the possession thereof.   Defend-
ants A. Jolly and Raphael Jolly admitted "that they assert
a claim and interest in and to said lands, and to the posses-
sion thereof, . . . but they deny that Mrs. Minnie Jolly . . .
has or claims any interest whatever in or to said described
lands, except as residing thereon with her husband, A. Jolly."

By way of cross-complaint, the defendants, A. Jolly and
Raphael Jolly, alleged: "That, on and prior to about the first
day of September, 1913, the said defendants were and had

been residing upon and cultivating and farming and raising hops on and under a lease from year to year for the plaintiffs a large portion of the lands described in the complaint; that, on or about said first day of September, 1913, the plaintiffs were desirous of leasing to these two defendants the lands described in the complaint, to be farmed and cultivated by defendants as hop lands and to be farmed as such, for the term of five years, and after considerable negotiations the plaintiffs drew up and submitted to the defendants a memoranda of lease containing the terms and conditions of the lease to be executed and delivered to the defendants within a reasonable time thereafter, a copy of the said memoranda of lease is hereunto annexed and made a part hereof, and marked Exhibit 'A.' '' The said memoranda were not signed by either of the parties.

It is next alleged that defendants ''accepted the terms and conditions of said proposed lease''; that it was understood and agreed that a lease, in accordance with the terms of said ''memoranda of lease,'' should be drawn and executed by plaintiffs; that in the meantime defendants were to enter into possession of said lands, the same as if said lease had been executed and delivered; that defendants went into possession of said lands and began the farming and cultivation thereof according to the terms of said ''memoranda of lease,'' believing a lease would be executed to them for the term of five years from the month of September, 1913, to the 1st of October, 1918; that, relying on said ''memoranda of lease,'' defendants began farming said lands and planted the same in hops, expended large sums of money in putting a certain levee in proper condition, in clearing about twenty acres of land, boring a well, the purchase of wagons and mules, etc.

It is alleged that, about the fifteenth day of December, 1913, plaintiffs presented to and asked defendants to sign a lease, but that defendants refused so to do ''because the said lease was altogether different and much more onerous than the one agreed upon, as set out in said Exhibit 'A,' and plaintiffs promised and agreed to change the same, and told defendants to go right ahead the same as had been agreed upon for the term of five years, that the matter would be fixed out thereafter as originally agreed upon''; that, relying upon said understanding, defendants continued to work said lands as required by the terms of said Exhibit ''A,'' ''and at the

end of the year in September, 1914, had done so at a loss of more than $250, besides the performance of their own labor up to said date." It is further alleged that, relying upon said understanding and with the consent of plaintiffs, defendants, in September and October, 1914, did a large amount of work on said ranch preparing the same for cultivation in the season of 1915, at a cost to them of more than two thousand one hundred dollars.

The prayer of the cross-complaint is "that plaintiffs be required to execute and deliver to said defendants a lease of the lands described in the complaint for a term of five years in accordance with and containing the terms and conditions set out and contained in the memoranda of lease, Exhibit 'A.' "

Exhibit "A," attached to the complaint, covers four typewritten pages, and, in terse sentences, specifies what each of the parties to the proposed lease was expected to do.

To said cross-complaint and to said Exhibit "A" plaintiffs filed a demurrer on general grounds and also specifying that certain designated portions thereof were ambiguous, uncertain, and unintelligible. The judge presiding at the hearing of the demurrer in the court below filed a written opinion which, among other matters, contained the following: "An inspection of the memoranda prepared and set forth as Exhibit 'A' in the complaint shows that the minds of the parties never met in many of the terms to be contained in the lease. These terms were left for after consideration and agreement between the parties. . . . The cross-complaint seems to be full and well pleaded. I cannot see how it will be possible for defendants to state the matters therein stated, or to supply any allegation that would render the pleading unobjectionable. Therefore the demurrer is sustained without leave to amend."

On the 28th of June, 1915, the cause coming on regularly for trial, plaintiffs moved for judgment upon the pleadings in accordance with the prayer of plaintiffs' complaint. The motion was granted and judgment was entered quieting plaintiffs' title to the premises described in the complaint and decreeing that they were entitled to the possession thereof. The appeal is by defendants from said judgment.

The demurrer to the cross-complaint was properly sustained, and, since the relief demanded by that pleading de-

pended entirely on the "memoranda of lease," it is manifest that no cause of action for such relief could be stated by the plaintiffs, hence the order refusing leave to amend was proper.

As seen, the learned trial judge, who heard and disposed of the demurrer to the cross-complaint, filed a written opinion setting forth his reasons for sustaining the demurrer. Said opinion is printed in the transcript on appeal. One of the reasons advanced by him in said opinion for holding that the cross-complaint failed to state a cause of action for the relief demanded by that pleading was that it appeared from the "memoranda of lease" referred to in said complaint that the agreement or lease to be executed by the parties was to be reduced to writing, and that, since the instrument just named was signed by neither of the parties and the proposed lease was not executed or put in writing and signed by the parties, there was no completed contract or agreement which was binding upon either of the parties, thus bringing the case as made by the cross-complaint within the doctrine enunciated in the following cases: *Fuller* v. *Reed,* 38 Cal. 100, *Spinney* v. *Downing,* 108 Cal. 666, [41 Pac. 797] , *Ambler* v. *Whipple,* 20 Wall. (U. S.) 546, [22 L. Ed. 403] , *Morrill* v. *Tehama etc. Co.,* 10 Nev. 125, which hold that where parties agree to reduce to writing contracts of a certain character whereby and wherein they propose to set forth the terms and conditions of the agreement verbally made with respect thereto, and fail to put their agreement in writing, there is a failure to make a completed contract or one that is binding upon either of the parties, and that an action on such an agreement cannot be maintained, notwithstanding that one of the parties may have partly executed the terms thereof. It may be observed that it is further held in said cases that as to contracts of the character of those dealt with therein, the party who claims to be entitled to the benefit of such contract on the ground of part performance with the knowledge of the other party cannot set up an estoppel as a defense against the repudiation of the agreement by the latter.

Cases may readily be conceived in which verbal agreements for the sale or leasing of real property might be enforced, or where the attempted repudiation or rejection of such agreements by the vendor or lessor might be met or overcome by setting up and establishing an estoppel. Cases in

which contracts not enforceable in courts of law because they contravene the statute of frauds but which will nevertheless be enforced by courts of equity are not uncommon. But the facts in such cases must be so clear that there can be little or no question as to their effect or that they plainly and clearly call for the favorable interposition of equity. The case here, however, so far as the cross-complaint is concerned, proceeds entirely upon the theory that the instrument called the "memoranda of lease" clearly and unmistakably discloses the terms and conditions of the proposed lease or sufficiently so to render the writing capable of being specifically enforced so that the result would be that the defendants, through a decree requiring the specific performance of its terms, would secure the lease which they conceive that its provisions call for. This in effect is the relief demanded by the cross-complaint. But the instrument is not clear and unmistakable as to its meaning and terms. Indeed, the difficulty standing in the way of its specific enforcement lies in the very fact of its manifest uncertainty and indefiniteness as to the terms upon which the land was to be leased to the defendants for the term of five years. In fact, as is stated and was pointed out by the trial judge in his written opinion, "an inspection of the memoranda shows that the minds of the parties never met on many of the terms to be contained in the proposed lease. These terms were left for future consideration, ascertainment and agreement between the parties."

A few of the particulars in which the instrument referred to is wholly wanting in certainty and definiteness as to terms and conditions may be given: It is provided therein: "It is contemplated that Jolly & Sons shall have a lease for five years. However, we must arrive at terms and rates of pmts. etc.," evidently meaning "terms and rates of payments." Again, it is provided that "Durst Bros. stand ready to advance Jolly & Sons money to buy their cattle or other stock, if proper terms according to their judgment can be obtained." It is further provided that "Jolly & Sons to buy Durst Bros. farming implements—wagons, scales, etc., as mutually agreed on." Furthermore, the "memoranda of lease," while containing a provision that the proposed lease shall likewise contain a provision that a certain portion of the land shall be "leveled," in no way designates or describes the portion of the land to which that provision refers. Nor is there any

provision or statement in the instrument indicating when the lease shall begin.

The foregoing is sufficient to show that there were vital features of the proposed lease upon which the minds of the parties had not met or come together. The writing upon which the defendants rely is therefore too indefinite and uncertain to make it capable of specific enforcement or to justify a decree compelling the plaintiffs to execute a lease in purported conformity thereto.

A court of equity obviously cannot prescribe or fix the terms and conditions to which the parties are to bind themselves by a contract or an agreement, and this is what the court in this case would be required to do in the several particulars above indicated if it were to attempt to compel the plaintiffs to execute to the defendants a lease to run for five years. It would have to ascertain, perhaps upon conflicting evidence, the matter of the ''rates and terms of payments.'' It would be required to ascertain, perhaps upon conflicting evidence, when the five year lease was to commence, and it would have to determine, possibly upon conflicting proofs, what portion of the land demised was to be leveled by the defendants. In addition to the particulars above mentioned in which the instrument called the ''memoranda of lease'' is deficient because of uncertainty and indefiniteness, there are other particulars in which the provisions contained in said instrument are ambiguously phrased, and this language would require construction to get at or ascertain the real meaning thereof. That the parties themselves do not agree as to the full meaning of the ''memoranda of lease'' is shown by the fact that the plaintiffs submitted to the defendants a written lease, which the latter refused to accept because, as they claimed, it did not conform to the terms set out in said memoranda.

''An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable, cannot be specifically enforced.'' (Civ. Code, sec. 3390, subd. 6; *Magee* v. *McManus,* 70 Cal. 553, [12 Pac. 451]; *Smith* v. *Taylor,* 82 Cal. 533, [23 Pac. 217]; *Berry* v. *Woodburn,* 107 Cal. 504, [40 Pac. 802]; *Stanton* v. *Singleton,* 126 Cal. 657, [47 L. R. A. 334, 59 Pac. 146]; *Reymond* v. *Laboudigue,* 148 Cal. 691, [84 Pac. 189].)

In *Magee* v. *McManus, supra,* it is said: "Whether the true contract be that which the court finds or that which the plaintiff alleges, it is indefinite and uncertain, not only as to the time of the payment of the note and mortgage to be executed, but as to the amount for which the mortgage was to be given, and the rate of interest upon the debt. It appears that those things were to be the subject of future ascertainment and agreement, so that the mortgage when executed would be sufficient security for the plaintiff. As, therefore, the agreement was not final, and it was indefinite and uncertain in its terms and in itself, specific performance of it could not be enforced in equity," citing *Morrison* v. *Rossignol,* 5 Cal. 65; *Los Angeles etc. Assn.* v. *Phillips,* 56 Cal. 539; *Potts* v. *Whitehead,* 20 N. J. Eq. 55.

In Pomeroy on Contracts, section 159, it is said: "A greater amount or degree of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is the basis of an action at law for damages. An action at law is founded upon a mere nonperformance by a defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of nonperformance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite, and precise understanding of all the terms; they must be exactly ascertained before the performance can be enforced."

It is not necessary to cite authorities to support the proposition that the court, when called upon specifically to enforce an agreement, must ascertain the terms of the instrument sought to be enforced from the instrument itself and not from the construction put upon it in the pleading demanding its enforcement. A complaint in specific performance cannot supply the deficiencies which may render the contract nonenforceable in equity.

But there appears to be some claim that the cross-complaint shows that the defendants held over and remained in possession of the land after the expiration of their first year's possession thereof under the alleged lease a sufficient length of time, without any demand of possession or notice to quit by the plaintiffs, to raise the presumption, declared in subdivision 2 of section 1161 of the Code of Civil Procedure, that

they were then holding the possession by permission of the plaintiffs and so entitled to hold under the lease for an additional full year.  The section mentioned provides that a holding over by the tenant for a period of sixty days under the circumstances above indicated will have the effect stated.

There is no such issue set up in the cross-complaint.  Nor is there anything therein showing precisely when the defendants went into the possession of the land under the agreement whereby the plaintiffs are alleged to have agreed to execute the five year lease of the land to the defendants; and there is no allegation showing when their first year of possession under said agreement expired.  As we have shown, the cross-complaint alleged that ''about the first day of September, 1913,'' the defendants were and had been residing on and cultivating, etc., the land; that, ''on or about the first day of September, 1913, the plaintiffs were desirous of leasing to these defendants the lands described in the complaint,'' etc., and that after considerable negotiations the plaintiffs submitted to the defendants the ''memoranda of lease,'' above referred to, and that the latter accepted the same.  In paragraph 4 of the cross-complaint, it is alleged that the defendants entered into the possession of said land with the knowledge and consent of the plaintiffs and began the farming and cultivation thereof according to the terms of said memoranda of lease, and believing that ''said properly executed lease of said lands would be drawn up and delivered to them for the term of five years from the month of September, 1913, up to the first day of Oct., 1918.''  Elsewhere the complaint sets forth in detail the work and improvements put upon the land by the defendants during the first year they occupied the same under the agreement, and concludes by alleging: ''And did other and all the work on said lands necessary to properly farm and occupy the same for the year ending October, 1914, and also for the full term of five years,'' etc.  Again, it is alleged that all that was required of the defendants by the alleged agreement in the way of working and farming the land was faithfully performed by the defendants, ''and at the end of the year in September, 1914, they had done so at a loss,'' etc.  In paragraph 11 it is alleged that ''these defendants during the months of September and October, 1914, continued to farm and work said lands,'' etc.  In the same paragraph it is alleged that the defendants cleared the land in

certain particulars preparatory to "the cropping of said lands for the year 1915," etc. In paragraph 12 it is alleged that the defendants "laid out and expended in cash and labor between the twenty-fifth day of September and the nineteenth day of October, 1914, the sum of $2,139.65," etc.

The above is a reproduction in substance of every allegation in the cross-complaint respecting dates or the times when the several acts referred to by the said complaint were done; and from said allegations it cannot be told whether the first year expired in the month of September or the month of October; nor is it made to appear therefrom that the defendants were in possession after the expiration of the month of October, 1914. Assuming, though, that the cross-complaint shows that the first year expired on the 1st of October, 1914, and that the defendants were in possession down to the last day of October or to the first day of November, 1914 (and this does not clearly appear from said pleading to be true), and yet the showing thus made or assumed to be made is not sufficient as to the time of holding over to bring the case within the terms of section 1161, subdivision 2, of the Code of Civil Procedure, so as to entitle the defendants to the possession of the land "for another full year."

We do not think the court erred in granting the motion of the plaintiffs for judgment on the pleadings.

In paragraph 1 of the answer, the defendants, while admitting that the ownership of the land is in the plaintiffs, deny that the "plaintiffs were at the time of the commencement of this action or are now entitled to the possession of the lands or any part thereof, *as will more fully hereinafter appear.*"

In paragraph 2 it is alleged that the defendants admit that they assert and claim an interest in and to said lands, and to the possession thereof, "*as will more fully hereinafter appear.*"

In paragraph 3 the defendants "deny that their claim of interest in or to said described lands, or that their or any of their estate or right or title or interest or claim in or to said lands or premises is without right, but on the contrary they aver that their said estate and right and title and interest and claim is good and valid."

Taken alone or without reference to the cross-complaint, the answer might perhaps properly be held to be sufficient to have submitted an issue upon the right of possession to the

land in controversy. But it is evident that, in support of the denials of the answer or as showing the grounds upon which the defendants based their claim to the right of possession, the intention was to make the allegations of the cross-complaint a part of the answer and that the answer does in fact do so by the words, used in two of its paragraphs, "as will more fully hereinafter appear." In fact, counsel for the appellants insist that, notwithstanding the order sustaining the demurrer to the cross-complaint, whereby the latter pleading as such was eliminated from the case, its allegations must, nevertheless, in so far as they may go in support of the denials of the answer, be regarded and considered as a part of the last named pleading. We think that this position is sound. The effect of the language, "as will more fully hereinafter appear," followed by the allegations of the cross-complaint setting forth in detail the nature of the claim of the defendants to the right of possession, is to make the latter allegations a part of the answer as effectually as though they were actually incorporated into and made a part of the answer. So far, therefore, as said allegations were intended as a cross-complaint calling for the affirmative relief appropriate thereto, they are no longer in the case; but as a part of the answer or the defense set up thereby, they can still be considered; and, so considering them, the irresistible conclusion is that they do not support the general denials of the answer. To the contrary, they vitiate or set at naught or contradict said denials. The complaint, as we have seen, alleges ownership in the plaintiffs. The answer admits this allegation. The presumption following from ownership is that the right of possession is in the owner. This presumption of the right of possession was not negatived by the allegations of the answer considered as above indicated. There was, then, no issue of fact to try, and consequently there was nothing left for the court to do but to order judgment on the pleadings.

We have discovered no reason for disturbing the judgment, and it is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.