[Civ. No. 4157. First Appellate District, Division One.—January 13, 1922.]

## WILLIAM A. PATTERSON, Respondent, v. A. R. REDDISH, Appellant.

[1] SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LAND—ASSUMPTION OF VENDOR'S CONTRACT—UNCERTAINTY AS TO PAYMENTS—EFFECT OF.—A contract for the sale of land providing that in part payment the purchaser is to assume a prior contract for the purchase of the land made by his vendor with a third party cannot be specifically enforced by the purchaser where the assumed contract is uncertain as to the times when the purchaser is to pay the installments called for therein.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Pierce, Critchlow & Barrette for Appellant.

Robert M. Clarke for Respondent.

RICHARDS, J.—This is an action to quiet title to the premises described in the plaintiff's complaint, which is in

the usual form made use of in such actions. The defendant in his answer, after admitting that he did claim an estate and interest in the property in question adverse to the said plaintiff and denying that his said claim was without right or merit, proceeded to set up a contract in writing between himself and the plaintiff William A. Patterson and his wife Nettie Patterson, for the sale by the plaintiff and his said wife of said premises to the defendant upon the terms set forth in said agreement. The defendant also filed a cross-complaint against said plaintiff and his wife setting forth the same matters averred in his answer and praying for the specific performance of said contract. The plaintiff demurred to the defendant's answer and cross-complaint upon the general ground that the affirmative matter pleaded therein did not constitute a sufficient defense or cause of cross-complaint, and also moved to strike out said affirmative matter in both the answer and cross-complaint. The trial court granted said motion and sustained the said demurrer as to both the answer and cross-complaint and thereafter, and upon the trial of the issues made by the mere denials of the defendant's answer, filed its findings of fact and conclusions of law in plaintiff's favor and ordered and entered its judgment for the plaintiff in accordance therewith. From such judgment the defendant has taken this appeal. The written contract upon which the defendant counted and relied in both his affirmative answer and cross-complaint reads as follows:

"This agreement, made and entered into this 24 day of Sept. A. D. 1919, by and between W. A. Patterson of Zelzah, Calif., hereinafter designated as the seller, and A. R. Reddish hereinafter designated as the buyer, of Los Angeles, Calif.

"Witnesseth: That the seller for the consideration herein mentioned agrees to sell and convey to the buyer, and the buyer for the consideration herein mentioned agrees to purchase the following described real property situate in the county of Los Angeles, state of California, to-wit: Lots 55–56–57–58 in section 13 and lots 7–8–9–10–23–24–25–26 section 24 Tp. 2 north range 16 west, containing 91 acres approximately. Said buyer hereby agrees to pay for said described premises the sum of $500.00 dollars per acre, pay-

able at Los Angeles, California, within the following times, to-wit: $50.00 dollars cash, the receipt of which is hereby acknowledged, and assume the contract of purchase given to J. S. Torrance, bal. to be paid one third at maturity of this agreement and one third six months from maturity of this contract & Bal. one year.

"In witness whereof, the parties hereto have signed their names and affixed their seals the day and year first above written.

"This agreement and option to run to November 25th, 1919."

The defendant also set forth in both his answer and cross-complaint the substance of the contract between J. S. Torrance and wife and the plaintiff referred to in the above agreement and which the defendant alleges had been prior to his own contract above set forth, orally made between said J. S. Torrance and wife and the plaintiff, for the purchase by the latter of the property in question from Torrance, which said oral agreement was reduced to writing after the date of the defendant's said contract, in which it was provided that the purchase price which the plaintiff was to pay said Torrance for said premises was $35,893.35, payable as follows: $6,465.68 on or before November 4, 1919; $6,885.67 on or before December 1, 1920; $6,885.50 on or before December 1, 1921; $6,885.50 on or before December 1, 1922; $6,885.50 on or before December 1, 1923, and the balance, $1,885.50, on or before December 1, 1924, with interest on all deferred payments at six per cent payable semi-annually from said fourth day of November, 1919. The defendant further alleged in both his said pleadings that on the twenty-fourth day of September 1919, the date of his contract with the plaintiff, he had made the initial payment of $50 required therein, but that on the eleventh day of October, 1919, the said plaintiff and his wife had given to said defendant written notice of their rescission of his said contract, and had therewith sent said defendant in a sealed envelope the sum of $50, which latter sum he had refused to receive but had returned in a registered letter to plaintiff, which letter the plaintiff had in turn refused to accept or receipt for and the same had been returned unopened to the defendant. In addition to these averments the defendant's answer and cross-complaint embraced the usual allegations of the de-

fendant's readiness and willingness to comply with and perform on his part all of the terms and conditions of his said written contract and of his offer so to do and of the plaintiff's refusal to accept said offers; and his contention based upon these averments is that he had sufficiently made out in his said pleadings a case for relief in equity in the way of the specific performance of his said written contract for the purchase of the premises in question and that the trial court was in error in striking out said portions of his said pleadings and in sustaining the demurrer thereto.

[1] The only question presented upon this appeal is as to whether the said defendant had presented in his said answer and cross-complaint a contract in writing for the purchase of the premises in question which a court of equity would lay hold of and specifically enforce. We are of the opinion that the defendant failed to present such a contract.

The real estate which by the terms of his said contract the defendant was to purchase consisted of 91 acres of land for which he was to pay at the rate of $500 per acre, the total sum of $45,500. In part payment of this sum he was to assume the so-called Torrance contract, which, according to the averments of his answer and cross-complaint, called for the further installment payments above specifically set forth, aggregating the sum of $35,893.35, extended over a period of five years, or until December 1, 1924, with interest on deferred payments at the rate of six per cent per annum from November 4, 1919. These payments, if made according to the terms of the Torrance contract, would leave the sum of $9,506.65 exclusive of the defendant's initial payment of $50 still to be paid to the plaintiff. But when was this to be paid? The defendant claims that the concluding clauses of his said agreement fix the times when these three installments of this balance were to be paid, namely: "Bal. to be paid one third at maturity of this agreement and one third six months from maturity of this contract & Bal. one year. This agreement and option to run to November 25th, 1919." What is meant by the phrase "at maturity of this agreement"? The defendant claims that it means November 25, 1919, but if we are to read the Torrance contract into this agreement as a part thereof, can it be said that the agreement as a whole will come to maturity until the payments required by the

Torrance contract have been fully made? The term "maturity" when used in connection with contracts generally is interpreted to refer to the time when its conditions and obligations are to be completely fulfilled; as, for example, in promissory notes, when the time fixed for payment arrives. (*Gilbert* v. *Sprague*, 88 Ill. App. 508.) In insurance policies it means the time fixed for the payment of the policy during the lifetime of or at the death of the insured. (*Union Cent. Life Ins. Co.* v. *Wood*, 11 Ind. App. 335 [37 N. E. 180, 39 N. E. 205].) If applied to bonds and other similar instruments, maturity refers to the termination of the period they have to run. (Bouvier's Law Dictionary— "Maturity.") Applying this interpretation to the Torrance contract it is clear that it did not reach maturity until the date for the payment of all of its installments had been reached. Can it then be said that the defendant's agreement would reach its maturity at an earlier date than that of the maturity of the Torrance contract which he assumed, and thereby made a part of his own contract? Clearly, here is an uncertainty upon the face of the defendant's agreement, since it is plainly susceptible of another construction than that which he himself has placed upon it. It was not necessary for the trial court and it is not necessary for us to resolve this uncertainty. It is sufficient to find its existence in order to defeat the defendant's asserted right to specific performance of said agreement. The Civil Code provides: "The following obligations cannot be specifically enforced: . . . 6. An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." (Civ. Code, sec. 3390.)

In Pomeroy on Contracts (sec. 159) the rule with reference to the degree of certainty required in order to the specific performance of agreements is thus laid down: "A greater amount or degree of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is the basis of an action at law for damages. An action at law is founded upon a mere nonperformance by a defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The

mere fact of nonperformance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite and precise understanding of all the terms; they must be exactly ascertained before the performance can be enforced.''

In the case of *Durst* v. *Jolly*, 35 Cal. App. 184 [169 'Pac. 449], the court correctly states that: ''It is not necessary to cite authorities to support the proposition that the court, when called upon specifically to enforce an agreement, must ascertain the terms of the instrument sought to be enforced from the instrument itself and not from the construction put upon it in the pleading demanding its enforcement. A complaint in specific performance cannot supply the deficiencies which may render the contract nonenforceable in equity.''

The cases of *Klein* v. *Markarian*, 175 Cal. 37 [165 Pac. 3], *Magee* v. *McManus*, 70 Cal. 553 [12 Pac. 451], and *Reymond* v. *Laboudigue*, 148 Cal. 691 [84 Pac. 189], may also be cited as illustrating the degree of exactitude required of contracts sought to be made the subject of specific performance. Tested by the foregoing principles the contract under consideration in the instant case in the particular above specified falls far short of that certainty which is essential to a specific performance of its terms. This being so, it could furnish neither a defense to the plaintiff's action to quiet title nor a sufficient basis for the defendant's cross-complaint. The trial court did not err, therefore, in sustaining the plaintiff's demurrer to the affirmative matter pleaded by the defendant in his answer and cross-complaint and in thereafter giving judgment in the plaintiff's favor quieting the title against the defendant's asserted claim.

Judgment affirmed.

Kerrigan, J., and Tyler, P. J., concurred.