[Civ. No. 3638. Third Appellate District.—January 29, 1929.]

HARRY CHANDLER et al., Appellants, v. W. I. HOLLINGSWORTH et al., Respondents.

Charles R. Morfoot and J. M. McCroskey for Appellants.

J. Wiseman MacDonald for Respondents.

SHIELDS, J., *pro tem.*—This is an action for specific performance of an agreement set forth in ''Exhibit A'' and attached to and made a part of plaintiffs' amended complaint.

It appears that the defendants Hollingsworth and Miles were part owners of a tract of about one thousand acres of land in the city of Los Angeles. At the time of the execu-

tion of the writing known as "Exhibit A" the legal title to this tract of land stood in the name of Title Guarantee and Trust Company, as trustee. The beneficial interest in the property stood, an undivided one-half in W. I. Hollingsworth and Hattie G. Hollingsworth as joint tenants, a one-quarter such interest in J. H. Miles and Sue A. Miles as joint tenants, and the remaining one-quarter interest in Marion O. Hooker. Later and after the execution of this writing the Hooker interest was acquired in equal shares by W. I. Hollingsworth and J. H. Miles. The plaintiffs, designated in the writing as "the syndicate," were, as stated in appellants' brief, "well known subdividers" who had "been successful in the marketing of various subdivisions in and around Los Angeles."

The contract or writing known as "Exhibit A" was executed April 12, 1923. It was entitled "Hollingsworth-Miles-Hooker Deal," and was signed by all of the plaintiffs and by defendants Holingsworth and Miles. It outlined a plan by which Hollingsworth and Miles were to convey the one thousand acre tract to a trustee who was to hold it and to perform certain offices for the benefit of the parties to the agreement. The trustee was to hold the property and to execute its authority under a "trust agreement to carry out the within provisions," and such provisions should be "the instructions to the trustee to draw the trust agreement." The property was to be subdivided, improved in a substantial way and resold by the plaintiffs. The work of such subdivision and improvement was to be done under the direction of plaintiffs Shoults and Woodruff. The improvements were to be paid for by a bond issue upon the property. General provisions were made for the payment of all sums realized from sales of the property, to the trustee, and the payment out of such sums, of expenses of the conduct of the business, by the trustee. References were made to releases of the several parcels as they might be sold and acceptance by the defendants Hollingsworth and Miles of trust deeds "on short terms" in lieu of money, for such releases. The beneficial interest in the trust to be created is stated to be seventy-five per cent in the plaintiffs and twenty-five per cent in the defendants Hollingsworth and Miles. Further details of this agreement need not here be recited.

Upon appropriate issues raised by the answer to the plaintiffs' complaint the cause went to trial and judgment was rendered for the defendants. The court found that the defendants Hollingsworth and Miles were not the sole owners of the land mentioned in "Exhibit A," but that the ownership thereof was as hereinabove stated. It was further found that this writing was not intended to be a contract of purchase or sale, but a mere memorandum of a scheme to be later worked out provided the parties could agree; that plaintiffs never at any time requested defendants to carry out the provisions of the contract; that plaintiffs never kept or performed any of the terms or conditions of the contract by them to be performed; that plaintiffs abandoned the contract and that defendants accepted such abandonment; that plaintiffs paid no consideration for the contract; that it was not just or reasonable as to defendants. Other findings need not be recited. Indeed, the above are referred to only to indicate the broad foundation upon which the judgment rests.

Among its conclusions of law the court found "that said memorandum agreement dated April 12, 1923, is so indefinite and uncertain, that the exact terms and conditions thereof cannot be ascertained."

If this conclusion was correctly reached it would finally dispose of the case. It would support the judgment of the court denying the plaintiffs' plea for specific performance, and render unnecessary any discussion of other questions presented by this appeal. About its correctness and the propriety of the judgment herein, it would seem that there can be no question.

Section 3390 of the Civil Code, in enumerating contracts which cannot be specifically performed, specifies as one of them "an agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable." The law to this effect is as well settled as is any principle within our jurisprudence.

In *Klein* v. *Markarian*, 175 Cal. 37 [165 Pac. 3], the court say, quoting abundant authority: "It is an old and unquestioned rule of equity that, whatever right there may be to maintain an action at law for damages, a contract will not be specifically enforced unless it be complete and certain in its terms." "A contract that is incomplete, uncertain or in-

definite in its material terms will not be specifically enforced in equity." (*Beal* v. *United Properties Co.*, 46 Cal. App. 287 [189 Pac. 346].) Amplification of this rule and illustrations of its application are countless, and readily found. (See *Buckmaster* v. *Bertram*, 186 Cal. 674 [200 Pac. 610]; *Stanton* v. *Singleton*, 126 Cal. 657 [47 A. L. R. 334, 59 Pac. 146]; *Anderson* v. *Charles*, 52 Cal. App. 290 [198 Pac. 641]; *Dillingham* v. *Dahlgren*, 52 Cal. App. 330 [198 Pac. 832]; Pomeroy's Specific Performance, 3d ed., sec. 145.)

Tested by this rule, the contract in question falls far short of the definiteness and detail which would permit of its specific execution. ■ In the first place it might be noted that under the contract Hollingsworth and Miles are to convey all of the one thousand acres of land to the trustee named in the contract, "free and clear of all encumbrances." This part of the contract clearly cannot be enforced, as these defendants are without title to a substantial interest in the property. At law they might be held to liability under such a provision and assessed in damages for its breach. But in an action in specific performance they cannot be ordered to convey property to which they hold no title. Appellants contend that they should be made to convey such interest as they do hold, to the trustee. The answer to this is that if they were required to do this in performance of their contract, that the appellants would be wholly unable to perform their reciprocal obligations. They could not lay out streets, subdivide acreage or sell lots on property in which other parties owned substantial interests; they could not record maps or plats of their subdivisions, nor dedicate streets or highways.

■ The contract or memoranda provides that the property is to be conveyed by the defendants to a trustee who is to operate "under a trust agreement." What is this agreement to contain? This is a matter of supreme importance to the defendants, who are asked to convey a very valuable property to the trustee. The trust agreement should define their right and specify and limit the powers of the trustee.

This agreement has not been drawn. Several drafts of proposed agreements were drawn by plaintiffs and submitted to defendants and rejected by them as not satisfactory. Under the contract the only specification with reference to what the trust agreement should contain is that it is provided

that such agreement should "carry out the within provisions" and the further statement that "the within shall be the instructions to the Trustee to draw the trust agreement." If the "within" were sufficiently definite, the plaintiffs need not have submitted to defendants their several drafts of a proposed trust agreement, but could have made the agreement to express the covenants of "Exhibit A" and demanded its acceptance.

They submitted no form of proposed trust agreement with their pleading, and had the court desired to order specific performance herein, it would have been impossible for it to frame such an agreement from the vague and indefinite terms of the contract.

■ The contract, "Exhibit A," provided that "it is understood that this property is to be developed and improved with streets, water systems, electricity, gas, paved boulevards, a tunnel running through the extension of Beachwood Drive into the property, provided satisfactory arrangements can be made with Mack Sennett either to purchase his property or for a right of way over the same, possibly a sewer system and schools." It must be remembered that these improvements are to be made on property alleged to be owned by defendants, and to be paid for out of the proceeds of its sale. Where were the streets to run, what was to be their number and the area covered by them? How were they to be improved and of what material to be constructed? Where was the tunnel to be dug, and who was to make the "arrangement" with Mack Sennett, and upon what terms? "Possibly" there were to be schools and a sewer system. Who was to determine this?

■ The contract further provides "it being understood that the above mentioned improvements are to be put in and paid for by a 7% serial bond issue upon the property. This syndicate is to arrange for the financing and disposing of same." Omitting any question as to the issuance of bonds on such undivided interest in the land as the defendants own and could convey, what is to be the amount of the bonds, their denomination, their period of maturity? When is the interest on the bonds to be paid, and, in case of default, what are to be the conditions upon which the bondholders might foreclose upon the property? Some of these objections might be obviated by a reasonable construction, but together they

constitute such an absence of agreement by the parties to the contract as a court of equity would not undertake to supply. (*Beal* v. *United Properties Co.*, 46 Cal. App. 287 [189 Pac. 346].) Other omissions might be stated as the amount and cost of improvements to be made, when payments are to be made to the owners of the land, and how lots are to be sold and upon what terms. The court should well hesitate to commit owners of a great property to the hazards of such an agreement. If any decree were to be entered herein in favor of the plaintiffs it would have to be so general and vague as to commit the court to a course of superintendence and direction, with many appeals to the court for its interpretation; and this a court of equity will not undertake. (*Stanton* v. *Singleton, supra; Crane* v. *Roach,* 29 Cal. App. 584 [256 Pac. 375]; Pomeroy on Specific Performance, 3d ed., sec. 312; *Poultry Producers Assn.* v. *Barlow,* 189 Cal. 289 [208 Pac. 93].)

We see no error in the rulings rejecting evidence offered to "explain" the contract.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.