[L. A. No. 16748. In Bank.—March 20, 1939.]

LONG BEACH DRUG COMPANY (a Corporation), Respondent, v. UNITED DRUG COMPANY (a Corporation), Appellant.

Joseph Scott and J. Howard Zieman for Appellant.

Earl E. Moss and James E. Pawson for Respondent.

SHENK, J.—The questions presented upon this appeal concern the validity and scope of a written agreement, and the right of plaintiff to permanently enjoin its violation by defendant, or to procure other relief. The word "defendant" is used to refer to both defendant United Drug Company, a Delaware corporation, and its predecessor, United Drug Company, a New Jersey corporation.

By the written agreement plaintiff was appointed the special and exclusive agent in Long Beach for the sale of defendant's Rexall remedies and other drug products. The contract was made on April 16, 1909, and was performed by the parties until the fall of 1936, when defendant gave notice that it would no longer be bound. In October, 1936, defendant started, without plaintiff's consent, to sell to other drug stores in Long Beach, and on May 10, 1937, it refused to make further sales to plaintiff. Plaintiff then brought this action and, upon trial of the cause, was awarded the relief

for which it prayed, to wit: a decree which (1) permanently enjoined defendant from directly or indirectly selling Rexall products to any dealer in Long Beach other than plaintiff and certain sub-agents; (2) ordered an accounting to ascertain all damage suffered by plaintiff from sales made in violation of the contract; and (3) ordered judgment for plaintiff for all sums found to be due it on the accounting, together with costs. Defendant appealed from this decree.

The written agreement is in words and figures as follows:

"Agreement made this 16th day of April in the year one thousand nine hundred and nine between the United Drug Company, a corporation organized under the laws of the State of New Jersey, and having its office and laboratory in the City of Boston and State of Massachusetts, party of the first part, and Long Beach Drug Co. of Long Beach, California party of the second part.

"Whereas, the party of the first part is in the business of making and selling the Rexall Remedies and other products.

"Whereas, the party of the second part has purchased from the party of the first part a portion of its Capital Stock, and desires to be appointed special selling agent of the party of the first part in the city of Long Beach.

"Now, therefore, this agreement witnesseth, that the parties hereto, in consideration of the sum of one dollar, by each to the other paid, the receipt whereof is hereby acknowledged, hereby agree as follows:

"First. The party of the first part hereby constitutes and appoints the party of the second part its special selling agent in above named place, and agrees not to sell its products to any other dealer in said place so long as the party of the second part shall perform the terms of this agreement.

"Second. The party of the first part hereby agrees that should the party of the second part become dissatisfied with the agency given him by this contract, or should the party of the second part feel that any misrepresentation has been made him by the party of the first part, or his representative, he can, by notifying the party of the first part, sell and the party of the first part hereby agrees to purchase, any capital stock of the United Drug Company that the party of the second part may hold, at its par value plus seven percent

interest on the same since the date of issue, less any dividends that may have been applied, and the party of the first part furthermore agrees that in the event of the party of the second part notifying the party of the first part of his desire to sell his stock, the party of the first part will, in addition to buying his capital stock, take back any and all merchandise that the party of the second part may have on hand at the price such merchandise may have cost the party of the second part.

"Third. The party of the first part further agrees to keep a record of all advertising and other expenses directly charged to the territory of the party of the second part, and to credit said record with all purchases, said record to be open to inspection of the party of the second part.

"Fourth. The party of the second part agrees to uphold all of the products of the party of the first part to the full list retail prices set by the party of the first part, and further agrees never under any circumstances to sell or allow said products to be sold to the wholesale or retail dealers except at full retail price.

"Fifth. The party of the second part further agrees to confine the sale of the products of the party of the first part *to his own retail store and to consumers only,* and it is mutually understood and agreed that in the event of any violation of the terms of articles fourth and fifth of this agreement by the party of the second part or its servants or agents the party of the first part shall thereupon become entitled to and the party of the second part shall pay the sum of one hundred dollars as liquidated damages for each and every such violation.

"Sixth. In the event of the party of the second part owning the preferred stock in the United Drug Company, it is agreed by the party of the first part, if it is mutually agreeable, to waive the three years' redemption clause inserted in the preferred stock certificate, so long as the territory controlled by the party of the second part shall prove profitable to the party of the first part, and so long allow him to control said stock.

"Seventh. It is further agreed that the party of the second part will, in case he desires to sell the United Drug

Company stock, first offer it to the executive committee of the party of the first part, giving ten days' notice.

"(Seal of Long
 Beach Drug Co.)
"UNITED DRUG COMPANY (Seal)
"LOUIS K. LIGGETT, General Manager
"LONG BEACH DRUG CO. (Seal)
"All conditions that exist in connection with this agreement are above stated."

■ A primary question is that of the validity of this agreement. Is it void for uncertainty? If not, then is it capable of enforcement by a court of equity? "That a greater degree or amount of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is the basis of an action at law for damages" has often been declared. (*Durst* v. *Jolly*, 35 Cal. App. 184 [169 Pac. 449]; *Noble* v. *Reid-Avery Co.*, 89 Cal. App. 75, 79 [264 Pac. 341]; *Long* v. *Sacramento Valley etc. Co.*, 127 Cal. App. 715, 723 [16 Pac. (2d) 337]; *Pascoe* v. *Morrison*, 219 Cal. 54, 58 [25 Pac. (2d) 9]; *Janssen* v. *Davis*, 219 Cal. 783, 787 [29 Pac. (2d) 196].) The contract may be valid and yet because of its inherent nature or because it lacks the necessary degree of definiteness may be unenforceable either by a direct decree of specific performance, or indirectly by means of a prohibitory injunction.

■ Testing first for validity, we find that the contract made by these parties was valid. By its terms plaintiff was appointed the special selling agent for defendant in Long Beach. Plaintiff expressly agreed to uphold all of defendant's products to the full list retail prices and to confine sales to its own retail store and to consumers only. Defendant agreed not to sell to any other dealer in the city so long as plaintiff should perform. Clearly implied in these express provisions was a covenant on the part of defendant to sell, and upon the part of plaintiff to purchase and keep on sale a supply of defendant's products sufficient to meet the demands of the retail trade for these particular remedies. (Civ. Code, secs. 1655, 1656.) ■ At the time this agreement was made, plaintiff's drug store afforded a desirable outlet for defendant's products. Long Beach had a population of only about 18,000 inhabitants, and the store was well

and centrally located. Furthermore, defendant was then endeavoring to effect a refinancing project, the success of which was vitally important to it, and to aid the plan plaintiff had purchased some $200 worth of defendant's corporate stock. To support the market for such stock it was essential that as little as possible be put up for public sale. Hence the provision of the agency agreement which required plaintiff, in event of dissatisfaction, to give defendant an opportunity to repurchase, and the covenant of defendant that in the event of such repurchase it would also take back at cost price any merchandise held by plaintiff. By the agreement as a whole defendant not only insured that so much of its stock as was held by plaintiff would be kept off the market during the life of the agency, but it also procured an advantageous outlet for the sale of its products in Long Beach. This was a good and sufficient consideration in the year 1909, and it is immaterial to the validity of the contract that by reason of the rapid growth of Long Beach and other factors, the agency later became so burdensome to defendant that it repented of its bargain and sought to repudiate it. The sufficiency of a purported consideration for a contract must be determined from the facts of the transaction as they existed when the contract was made rather than by subsequent developments. (*Parsons* v. *Cashman,* 23 Cal. App. 298 [137 Pac. 1109]; *Johnson* v. *Studley,* 80 Cal. App. 538, 560 [252 Pac. 638]; *Gosnell* v. *Lloyd,* 215 Cal. 244 [10 Pac. (2d) 45]; 6 Cal. Jur., sec. 116, p. 167.)

█ It is the general rule that a contract is not fatally defective merely because it does not specify a time presently definite for its termination. (13 C. J., p. 271.) While the agreement here does not state a definite term, it is not wholly silent with respect to its duration. It provides that the exclusive selling right of plaintiff is to endure so long as plaintiff "shall perform the terms of this agreement"; that is, so long as plaintiff shall, in addition to observing the covenant with respect to sale of stock, etc., "uphold all of the products" of defendant to the full list retail prices, confining the sale thereof to its "own retail store and to consumers only". Provisions such as this for the duration of an agreement are sufficiently certain and have frequently been declared valid. In *Sutliff* v. *Seidenberg,* 132 Cal. 63 [64 Pac.

131, 469] ; the agreement was to remain in force "as long as our goods find ready sale on this Coast", and the court said it was not so vaguely expressed as to be wholly unascertainable. In *Noble* v. *Reid-Avery Co., supra,* plaintiff agreed to "handle the output" of defendant's "welding-rods", it being understood at the time of the first order that plaintiff "should have the exclusive right to sell the goods and represent (defendant) in that part of California known as Southern California, as long as they were able to give faithful service and a business management to the trade and produce the trade that was warranted in the territory allotted to them, and no longer". Upholding the validity of the contract, the court said: "Such provisions for the duration of the contract are sufficiently certain and valid. As a general proposition the failure of an executory contract to state a time presently definite for its termination does not render it void for uncertainty." This holding was approved in *Great Western D. Products* v. *J. A. Wathen D. Co.,* 10 Cal. (2d) 442 [74 Pac. (2d) 745], where there was an agreement "that as long as the plaintiff purchases and continues to purchase from the defendant all of its John A. Wathen Distillery Company warehouse receipts for whiskey that it may require and sells and exploits in California said warehouse receipts, and refrains from selling and exploiting warehouse receipts from any other distillery, the defendant will not sell in California any of the said warehouse receipts (for resale to investors) to any other person except one in San Francisco". The court held that the failure to specifically limit the duration of the contract did not fatally affect it and did not give rise to a right to terminate it at will without a liability for damages. (See, also, *Gallagher* v. *Equitable Gas Light Co.,* 141 Cal. 699 [75 Pac. 329] ; *Wittmann* v. *Whittingham,* 85 Cal. App. 140 [259 Pac. 63] ; *Ehrenworth* v. *Stuhmer & Co.,* 229 N. Y. 210 [128 N. E. 108].)

█ A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if this can be done without violating the intention of the parties. (Civ. Code, sec. 1643.) An interpretation which gives effect is preferred to one which makes void. (Civ. Code, sec. 3541.) Moreover, the construction placed upon the instrument by the parties themselves

is persuasive; the law recognizes that the practical construction made by them is cogent evidence of what they intended. (*Tennant* v. *Wilde,* 98 Cal. App. 437, cases cited pp. 453, 454 [277 Pac. 137]; *Burns* v. *Peters,* 5 Cal. (2d) 619, 623 [55 Pac. (2d) 1182]; *Retsloff* v. *Smith,* 79 Cal. App. 443, 452 [249 Pac. 886]; *Moore* v. *Superior Court,* 114 Cal. App. 333 [299 Pac. 760].) ▮ The undisputed facts of the present case leave no doubt as to the manner in which the parties construed the contract. They performed under it for a period of twenty-seven years without complaint of its lack of definiteness or intimation that it was void for uncertainty. At all times plaintiff carried a stock of defendant's products and sold them at full list price in its retail store. Defendant, on its part, filled plaintiff's orders and expressed no dissatisfaction with the representation it was receiving. The corporate stock which plaintiff held was never offered for sale or sold by it. The existence of plaintiff's exclusive agency was recognized and on occasions definitely ratified. It was recognized in 1925 in connection with the establishment of a subagency in Orange Center, Long Beach. On December 29, 1930, defendant wrote plaintiff saying: "This letter is for the purpose of giving you written assurance that in permitting the United Drug Company to place certain Sub-Agencies within the city of Long Beach, this act does not in any way abrogate your present Rexall Franchise." In January, 1931, a subagency was granted to L. E. Stucker. Appended to the subagency agreement was the following supplementary provision, executed by the subagent and also by both plaintiff and defendant: "This Sub-Agency Agreement with L. E. Stucker and the United Drug Company is given with the understanding, and can be terminated upon thirty days notice if at any time the Long Beach Drug Company, the authorized agent, feels the said Sub-agency is detrimental to its business." Later two other subagencies were created.

From the year 1909 until 1923, the record shows there was a substantial yearly increase in the sales by plaintiff of defendant's products, whereas from 1923 until defendant's repudiation of the contract in 1936, there was a gradual decline. As against $1639 for the year 1909, the 1923 sales totaled $19,927.07. Sales for the year 1934 declined to the low mark of $2,829.44. Between 1910 and 1920, according to the official census, the population of Long Beach rose from 18,809 to

55,593. Outside communities were included within the city area, and by 1930 there was an estimated population of 142,032. This rapid growth of the city, combined with the declining sales by plaintiff after the year 1923, made the agency contract increasingly disadvantageous to defendant. When defendant later acquired or became affiliated with the Owl Drug Company, and desired to use the four Owl Drug stores in Long Beach as outlets for its products, it simply notified plaintiff that it would no longer recognize the 1909 agreement. Between October, 1936, and December, 1937, it sold $10,604.70 worth of its products to the four Owl stores. It continued to sell to them and to some of the other stores until the date of judgment herein.

This recital of undisputed facts shows that the construction of the agreement as lawful and operative accords with the recognition which was given to it by the parties themselves for some twenty-seven years. The further fact that during the latter portion of that period the obligation became burdensome to defendant does not alter the purport and effect of the writing. We hold that the contract is valid.

■ The next question is whether plaintiff is entitled, under this valid contract, to the equitable remedy of prohibitory injunction. Plaintiff, by its complaint herein, did not ask the court for a direct decree compelling defendant to specifically perform the contract, but sought such relief indirectly by means of the injunction, the assumption being that if defendant were permanently restrained from selling to other dealers in Long Beach, it would continue to sell to plaintiff rather than abandon so lucrative a territory.

Defendant contends that the prohibitory injunction will not lie, citing section 3423, subdivision 5 of the Civil Code, and section 526, subdivision 5, of the Code of Civil Procedure, both of which provide that "an injunction cannot be granted . . . to prevent the breach of a contract . . . the performance of which would not be specifically enforced". In *Anderson* v. *Neal Institutes Co.*, 37 Cal. App. 174 [173 Pac. 779], this provision was construed and the doctrine was declared that where a contract contains both affirmative and negative stipulations, equity will not interfere to prevent a breach of the negative covenant when the affirmative covenant is of such a nature that it cannot be specifically enforced by a judicial decree. While this declaration is contrary to the rule of

the Restatement (Restatement, Contracts, sec. 380, p. 704), it is, by reason of the express statutory provision, the settled law of this jurisdiction.

The facts of the Anderson case are similar to those of the case at bar. There by written contract the defendant Neal Institutes had granted to plaintiff for a term of ninety-nine years the exclusive right to advertise and use the Neal remedies and method of treatment in the northern half of this state, and to use the name "Neal" in connection with such institutes as might be established in that territory. Defendant had further agreed to supply to plaintiff such medicines and advertising literature as he might require. Plaintiff established a Neal institute in San Francisco and thereafter by extensive advertising and personal care built up a valuable Neal business and good will. After both parties had performed under the contract for several years, defendant established a rival Neal institute in the same city, and refused to furnish any of its remedies to plaintiff. Plaintiff sought relief by way of prohibitory injunction and an accounting. A general demurrer to the complaint was sustained without leave to amend on the ground that an injunction could not properly be granted. Affirming this ruling, the District Court of Appeal declared that as the contract contained affirmative and implied negative covenants, and as it was of such a nature that specific performance could not be decreed, an injunction to prevent its breach would not lie. Said the court: "Where, as here, a contract contains both affirmative and negative stipulations, the authorities are in irreconcilable conflict upon the question whether equity will interfere to prevent a breach of the negative covenant when the affirmative covenant is of such a nature that it cannot be specifically enforced by a judicial decree. (2 High on Injunctions, sec. 1164.) . . . But in this state the question was put at rest at the time of the adoption of the Civil Code by the terms of subdivision 5 of section 3423 (since incorporated in the Code of Civil Procedure [section 526]) . . . Subdivision 5 of section 3423 is free from ambiguity or uncertainty. It clearly declares as the law in this state the rule laid down in one of two opposing lines of authority. If there could be a doubt as to the intention of the legislature in this regard, it is removed by an examination of the notes to section 1912 of Field's Proposed Draft of the Civil Code of New York, which

section was practically adopted in this state; and by an examination of the notes to subdivision 5, section 3423, of the Civil Code Annotated, 1874, where the following authorities, cited as the foundation of that provision, declare that the court will not interfere by injunction to prevent the violation of an agreement of which, from the nature of the subject, there could be no decree of specific performance. (*Newbery* v. *James*, 2 Mer. 446 [35 Eng. Reprint, 1011]; *Williams* v. *Williams*, 3 Mer. 160 [36 Eng. Reprint, 62]; *Hamblin* v. *Dinneford*, 2 Edw. Ch. (N. Y.) 529; *Sanquirico* v. *Benedetti*, 1 Barb. (N. Y.) 315.) References in the case of *Peterson* v. *McDonald*, 13 Cal. App. 644 [110 Pac. 465], and of *Farnum* v. *Clarke*, 148 Cal. 610, 615 [84 Pac. 166], tend to support the view here taken.''

The above holding was approved in *Poultry Producers, etc.,* v. *Barlow*, 189 Cal. 278 [208 Pac. 93]. That case concerned a contract whereby the defendant agreed to ''sell and deliver'' to plaintiff, and the latter agreed ''to purchase and market'' such of the eggs produced by defendant's poultry during the years 1917, 1918, and 1919, as he intended to sell or market in any event, and further plaintiff agreed ''to use its best efforts to resell said eggs at the best prices obtainable under market conditions''. In May, 1917, in violation of this contract defendant sold to others than plaintiff all of the eggs produced by his flocks. Plaintiff sued for damages for breach of contract by reason of the sale of eggs to other purchasers, for specific performance of the covenant to sell and deliver eggs to it during the unexpired term covered by the contract, and for an injunction restraining defendant from making sales of his product to other persons. This relief was granted by the trial court. On appeal the judgment for recovery of damages was affirmed, but a reversal was ordered as to injunction and specific performance. This court, after an exhaustive review of the subject, affirmed the doctrine of *Anderson* v. *Neal Institutes, supra.* (See, also, *O'Brien* v. *O'Brien*, 197 Cal. 577, 588 [241 Pac. 861]; *Richfield Oil Co.* v. *Hercules Gasoline Co.*, 112 Cal. App. 431 [297 Pac. 73]; *Engemoen* v. *Rea*, 26 Fed. (2d) 576.)

■ Seeking to distinguish the present case and to avoid application of the doctrine, plaintiff asserts that the instrument here contains only negative covenants. We cannot so view it. Clearly the contract is not wholly negative in char-

acter. In addition to the negative covenant of defendant to refrain from selling to dealers other than plaintiff, there are express and implied material affirmative covenants, notably an implied affirmative covenant on the part of defendant to sell to plaintiff as its special agent, and on the part of plaintiff an implied affirmative covenant to purchase from defendant and have available for resale a sufficient supply of its drug products to meet the demands of the retail trade, with the express covenant to "uphold all of the products . . . to the full list retail prices" set by defendant.

Unless these affirmative covenants are of such a nature that they could be specifically enforced by a judicial decree, the trial court erred in granting the prohibitory injunction. (Code Civ. Proc., sec. 526, subd. 5; Civ. Code, sec. 3423, subd. 5, and cases, *supra*.) That specific enforcement would not be allowed has already been intimated in the foregoing discussion, and it becomes evident upon a consideration of the nature of the stipulations. ██ It is, as stated in *Poultry Producers, etc.,* v. *Barlow, supra* (189 Cal., at p. 289), "the cognate rule that courts of equity will not decree the specific performance of contracts which by their terms stipulate for a succession of acts whose performance cannot be consummated by one transaction, but will be continuous and require protracted supervision and direction. (*Stanton* v. *Singleton,* 126 Cal. 657, 665 [59 Pac. 146, 47 L. R. A. 334]; *Pacific etc. Ry. Co.* v. *Campbell-Johnston, supra* (153 Cal. 106 [94 Pac. 623]); *Crane* v. *Roach,* 29 Cal. App. 584, 587 [156 Pac. 375]; *Anderson* v. *Neal Institutes Co., supra.)* 'Courts of equity,' says the court in *Pacific etc. Ry. Co.* v. *Campbell-Johnston,* 153 Cal. 117 [94 Pac. 623, 628], 'only decree specific performance where the subject-matter of the decree is capable of being embraced in one order and is immediately enforceable. It will not decree specific performance when the duty to be performed is a continuous one extending possibly over a long period of time, and which, in order that the performance may be made effectual, will necessarily require constant personal supervision and oversight of it by the court.' '' (See, also, *Pacific Elec., etc.,* v. *Campbell-Johnston,* 153 Cal. 106 [94 Pac. 623]; *Sheehan* v. *Vedder,* 108 Cal. App. 419 [292 Pac. 175]; *Moore* v. *Heron,* 108 Cal. App. 705 [292 Pac. 136]; *Chandler* v. *Hollingsworth,* 96 Cal. App. 472 [274 Pac. 581]; *Richfield Oil Co.* v. *Hercules Gasoline Co., supra;*

*Engemoen* v. *Rea, supra*; 23 Cal. Jur., p. 480, sec. 43; Restatement, Contracts, sec. 371, p. 675.)

So, in the present case, to undertake to compel defendant to sell to plaintiff, and plaintiff to purchase from defendant and to uphold all products to the full list retail price set by defendant, over an indefinite term, would impose upon the court a duty well nigh impossible of performance. For this reason, if no other, the court would be constrained to deny equitable relief and to leave the parties to assert their legal rights under the contract. Further grounds urged in support of the contention that the contract is not susceptible of specific performance, to wit: that it is unfair and lacks sufficient certainty, a definite term, adequate consideration, and mutuality of remedy need not be discussed. It is clear that the contract is specifically unenforceable, and that therefore plaintiff is not entitled to a prohibitory injunction.

This disposes of all points to be determined by the appeal on the merits. There are also under submission two proceedings, one a petition for *supersedeas* to stay operation of the prohibitory injunction pending the appeal, the other a motion to dismiss the temporary stay issued upon the hearing of the order to show cause. The determination of the appeal on the merits renders moot all questions presented in these proceedings.

The two proceedings must therefore be, and they are hereby, dismissed. The decree of the trial court is reversed.

Curtis, J., Langdon, J., Edmonds, J., Seawell, J., Houser, J., and Waste, C. J., concurred.

A petition for a rehearing was denied on April 19, 1939, and the following opinion then rendered thereon:

THE COURT.—On petition for rehearing it is urged that this court should permit relief by way of accounting to determine the damages, if any, which the plaintiff claims to have suffered by the alleged breach of the contract. The plaintiff has apparently misconceived the effect of the decision. It holds that equitable relief is not appropriate, as entailing well nigh impossible supervision of performance of the contract by the court. "For this reason", it is said, "if no other, the court would be constrained to deny equitable relief and to leave the parties to assert their legal rights under the contract."

 Although the equitable remedy is not available to plaintiff, nevertheless the contract sued upon is valid and sufficiently certain to warrant the trial court in entertaining a plea for the recovery of damages (see cases cited in opinion). The complaint, while praying for "all just and proper relief", was not framed in the alternative to seek the legal remedy for breach of the contract as a whole. It does ask, in connection with the prayer for injunctive relief, that an accounting be had and that an award be made to cover damages suffered over a specified period by plaintiff because of defendant's breach of the negative covenant of the contract. This, however, is not an assertion of plaintiff's full legal right, i. e., the right to seek damages not only for breach of the negative covenant (the covenant not to sell to other stores in Long Beach), but also for breach of the affirmative covenant (revocation of the exclusive agency and refusal to sell to plaintiff).

Under present code procedure, which permits a party to litigate his right to legal and equitable relief in the same action, and by amendment to ask a change of remedy, there appears to be no reason why plaintiff, if so advised, should not apply for permission to amend its pleading. (*Farnsworth* v. *Hunter,* 11 Cal. (2d) 27 [77 Pac. (2d) 840] ; *Peters* v. *Binnard,* 219 Cal. 141 [25 Pac. (2d) 834; *Pascoe* v. *Morrison,* 219 Cal. 54 [25 Pac. (2d) 9] ; *Ahlers* v. *Smiley,* 163 Cal. 200 [124 Pac. 827] ; 10 Cal. Jur., p. 10, sec. 7; note, 22 C. L. R., p. 208.) Whether the plaintiff is entitled to damages, or to what extent, is not here intimated. That is a matter to be proved upon trial of the issue. If such trial be permitted, under amended pleadings, evidence may be adduced as to the extent of plaintiff's alleged damage, if any, by reason of defendant's refusal to sell to it, and also by reason of defendant's sales to other stores; likewise as to defendant's damage, if any, by reason of plaintiff's alleged failure to support its products.

 It would seem that so far as the right to seek this additional relief is concerned, it is immaterial whether in the final analysis the contract be construed as a contract of agency, or as a contract of sale and purchase. (*Kelly-Springfield Tire Co.* v. *Bobo,* 4 Fed. (2d) 71; *Reiter* v. *Anderson,* 87 Cal. App. 642 [262 Pac. 415].) Construed as a contract of agency, even though it is patently not an agency coupled

with an interest and is therefore revocable, nevertheless the *power* to revoke does not necessarily confer the *right* to revoke, and in the event of a wrongful exercise of the power, the principal must answer in damages. (*Boehm* v. *Spreckels,* 183 Cal. 239, 248 [191 Pac. 5] ; *Roth* v. *Moeller,* 185 Cal. 415 [197 Pac. 62] ; *Capital Nat. Bank v. Stoll,* 220 Cal. 260 [30 Pac. (2d) 411] ; *Stoll* v. *Stoll,* 5 Cal. (2d) 687 [56 Pac. (2d) 226] ; *Kelly-Springfield Tire Co.* v. *Bobo, supra.*) Construed as a contract of sale and purchase, a breach thereof gives rise to an action for damages. (*Hacker Pipe etc. Co.* v. *Chapman Valve Mfg. Co.,* 17 Cal. App. (2d) 265 [61 Pac. (2d) 944] ; *Pease* v. *Lindsey,* 129 Cal. App. 408 [18 Pac. (2d) 717].)

The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent, or difficult of ascertainment does not bar the recovery. (*Hacker Pipe etc. Co.* v. *Chapman Valve Mfg. Co., supra; Caspary* v. *Moore,* 21 Cal. App. (2d) 694 [70 Pac. (2d) 224].)

The petition for a rehearing is denied.

Curtis, J., Houser, J., and Edmonds, J., voted for a rehearing.